STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Harold W. KUNTZ, Defendant-Appellant-Cross Petitioner.†

Supreme Court

*No. 88–1565–CR. Argued October 5, 1990.—Decided April 3, 1991.*

(Also reported in 467 N.W.2d 531.)

†Motion for reconsideration denied.

723

726

For the plaintiff-respondent-petitioner the cause was argued by *Christopher G. Wren,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-appellant-cross petitioner there were briefs and oral argument by *Charles Bennett Vetzner,* assistant state public defender.

WILLIAM A. BABLITCH, J.   The State of Wisconsin (State) appeals a decision of the court of appeals which reversed Harold Kuntz's (Kuntz) conviction for arson to a building. The court of appeals concluded that because the jury instructions relieved the State of its burden of proving each element of arson beyond a reasonable doubt, the conviction must be reversed. We con-

clude that although the circuit court's instruction created a mandatory conclusive presumption as to an element of the arson charge, the presumption did not play any role in the jury's verdict. Consequently, this case presents the rare situation in which a conclusive presumption regarding an element of the crime is harmless error. Therefore, we reverse the court of appeals on this issue.

Kuntz raises four additional issues challenging his convictions for first-degree murder and burglary/battery: 1) whether the prosecution could use illegally obtained custodial statements of the defendant to impeach the testimony of a prosecution witness; 2) whether evidence of uncharged misconduct by the defendant eleven and sixteen years earlier was admissible; 3) whether evidence of a prior misdemeanor conviction of a crime not involving dishonesty may be used to impeach the defendant's credibility; and 4) whether convictions and punishment for both first-degree murder and burglary/battery constitute multiple punishments for the same offense. We find no merit with respect to these issues, and, accordingly, we affirm the court of appeals' decision on these issues.

On September 18, 1987, Harold Kuntz was convicted of three felonies: committing battery in the course of a burglary, contrary to sec. 943.10(2)(d), Stats.;[1]

---

[1]Section 943.10 **Burglary** provides:

(1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class C felony:
    (a) Any building or dwelling;

\* \* \*

(2) Whoever violates sub. (1) under any of the following circumstances is guilty of a Class B felony:

arson, contrary to sec. 943.02(1)(a);[2] and first-degree murder, contrary to sec. 940.01.[3] Kuntz's convictions stem from occurrences on the evening of March 1, 1987, at the Twin Oaks Trailer Court near Whitewater, Wisconsin where Kuntz's estranged wife, Karen Kuntz, lived with her daughters Sandy and Susan Bowers.

Karen Kuntz testified that at about 10 p.m. on the night in question, she returned to the trailer park with her friend Dan Deegan. As they entered the trailer park, Ms. Kuntz saw the defendant's red pickup truck approaching the intersection with its lights off. She recognized the defendant as the driver and observed the truck enter the main highway and travel "a ways" before turning on its lights.

When Ms. Kuntz arrived at her mobile home, she smelled smoke. Although both doors of the mobile home had been locked when she left the mobile home at 9 p.m. that evening, she discovered the front door unlocked and the back door wide open. She discovered her daughter Sandy Bowers lying behind the front door. Ms. Bowers was unconscious and had blackened eyes and head injuries. A pathologist at trial testified that Bowers' skull

* * *

(d)  While in the burglarized enclosure commits a battery upon a person lawfully therein.

[2]Section 943.02(1)(a)  **Arson of buildings** provides:

Whoever does any of the following is guilty of a Class B felony:
(a)  By means of fire, intentionally damages any building of another without his consent . . ..

[3]Section  940.01 **First-degree  murder** (1985–86) provides:

(1)  Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.
(2)  In this chapter 'intent to kill' means the mental purpose to take the life of another human being.

had been "shattered like an eggshell," probably by a blunt instrument with a thin wedge point, and that these injuries were the cause of her death 18 days later on March 19.

Ms. Kuntz's brother and Deegan put out the fire in the mobile home. The State at trial presented opinion testimony that the fire had been deliberately set by an open flame in two distinct areas within the bedroom of the mobile home.

Harold Kuntz was arrested on the morning of March 2, 1987 while sleeping at the home of Beverly Salmon. Salmon later testified that she had arrived home shortly after 10:00 p.m. on March 1 to find Kuntz waiting for her in his truck in the driveway. She also testified that at his suggestion she and Kuntz took a ride. They travelled on back roads to Beloit and Milwaukee before arriving back at her home at about 4:00 a.m. on March 2. Somewhere during this journey Kuntz apparently lost or disposed of his boots which were missing when they returned to Salmon's.

Shortly after Kuntz's arrest, he was taken to an interview room at the jail and given *Miranda* warnings. *See Miranda v. Arizona,* 384 U.S. 436 (1966). Kuntz contends that he told police he did not want to talk, that he had a lawyer, and that he wanted to go back to his cell. Less than four hours later the same officer again brought the defendant to the same interview room and, defendant asserts, began interrogating him without issuing new *Miranda* warnings. At this point, Kuntz made statements to the police indicating that he had not been at the Twin Oaks Trailer Park the previous evening.

At trial, Karen Kuntz testified that she had seen the defendant's truck drive past her mobile home with its lights off four or five times on February 23, 1987. She testified that she talked to the defendant on February 25,

732

1987, after he had followed Deegan's car. The defendant had told her he needed her and that if he couldn't have her nobody else could and that she would be sorry if she went through a divorce. Ms. Kuntz further testified that the defendant had threatened her on previous occasions as well, stating that she would never own anything, that he would destroy anything she owned, and on two occasions that he would kill her children. Several other witnesses testified that they had heard Kuntz threaten to hurt Karen Kuntz and her children and destroy her property.

The defendant testified on his own behalf at trial. He admitted that he went to the trailer court on March 1 around 10 p.m. He drove past Karen Kuntz's mobile home and then came back out to the intersection without stopping because Karen's car was not there. At the intersection he stopped his truck, shut off the lights, and made some notes about a plumbing job he had just completed. After he completed that task and began moving forward in the truck, he saw another car coming towards him, but he could not identify anyone in that vehicle.

The jury found Kuntz guilty of all three charges after a five-day trial. The circuit court sentenced Kuntz to life in prison for the first-degree murder conviction and twenty years each for the arson and burglary/battery convictions to be served consecutively. The court of appeals affirmed Kuntz's convictions for murder and burglary/battery, but reversed the arson conviction and ordered a new trial.

Additional facts are set forth below.

### Jury Instructions

The first issue is whether the circuit court relieved the State of its burden of proving every element of the

arson charge beyond a reasonable doubt in violation of Kuntz's due process rights. The court of appeals held that the jury instruction, "[a] mobile home is a building," relieved the State of its burden of proving a necessary element of the offense—that a "building" was damaged by fire. We hold that although the instruction was erroneous because it created a mandatory conclusive presumption regarding an element of the arson offense, the error was harmless.

After both parties rested, the circuit court and counsel conferred regarding the jury instructions. The court proposed to use the pattern arson instruction, Wis JI—Criminal 1404. The pattern instruction contains no reference to a trailer or mobile home. Neither party raised a question whether a trailer or a mobile home is a building, for purposes of sec. 943.02(1)(a), Stats., and neither party objected to the proposed use of the standard arson instruction.

When the conference ended at 10:33 a.m., the circuit court recessed for ten to fifteen minutes. When the court reconvened, it noted that counsel "now have instructions copies and copies of the verdict." The copies of the arson instructions contained the additional sentence, "[a] mobile home is a building." The circuit court did not inform either party that this sentence had been added to the standard instruction. The court immediately called in the jury, and the parties made their final arguments. No part of the arguments touched on the issue of whether a trailer or a mobile home is a building.

At 1:05 p.m., the court recessed for lunch and then reconvened at 2:17 p.m. The jury returned to the courtroom and was orally instructed, including the arson instruction with the additional words. Neither party objected during or after the instructions.

As a preliminary matter, we note that the judge should have alerted both parties that it had added language to the standard jury instructions after the instructions conference. To prevent this specific issue from arising in the future, we exercise our superintending authority under article VII, sec. 3(1) of the Wisconsin Constitution to declare that the circuit courts of this state must inform counsel of changes they make to jury instructions following the instructions conference. We believe that this rule is necessary to ensure that both parties are aware of the actual content of the jury instructions.

Whether the jury instructions given by the circuit court violated Kuntz's right to due process is a question of law. *State v. Zelenka,* 130 Wis. 34, 43, 387 N.W.2d 55 (1986). This court must decide questions of law independently without deference to the decision of the lower courts. *Id.*

We hold that although the jury instructions created a mandatory conclusive presumption regarding an element of the arson offense, this case presents one of the exceedingly rare situations in which a conclusive presumption is harmless error because we are confident the error did not play any role in the jury's verdict.

Section 943.02(1)(a), Stats., requires the State to prove that a building has been damaged by fire. A separate statute, sec. 943.03, which provides a lesser penalty, covers arson which damages property other than buildings. Kuntz contends that the jury instruction "[a] mobile home is a building," was a mandatory conclusive presumption that required the jury to find that the State had proved that a building had been damaged by fire if the jury found that the structure damaged by fire was a

mobile home. Kuntz asserts that the instruction unconstitutionally foreclosed the defendant's right to have the jury decide whether this structure was a building.

The State contends that by characterizing the mobile home as a building, the circuit court merely gave definitional content to a statutory term. The State claims that this instruction is analogous to the instruction upheld by the court of appeals in *State v. Childs,* 146 Wis. 2d 116, 120, 430 N.W.2d 353 (Ct. App. 1988), *cert. denied* 109 S. Ct. 1154.

In *Childs,* the defendant was charged with second-degree sexual assault contrary to sec. 940.225(2)(a), Stats., which prohibits sexual intercourse, including fellatio, with another person without consent by use or threat of force or violence. Fellatio is not defined under the statutes. The court of appeals found that the circuit court's additional instruction that "fellatio is the oral stimulation of the penis," was not error because it is appropriate for the circuit court to instruct the jury on the ordinary and common meaning of a word as established by the definition in a recognized dictionary. *Childs,* 146 Wis. 2d at 120.

It is axiomatic that the State must prove all the elements of a crime beyond a reasonable doubt to convict a defendant. *Muller v. State,* 94 Wis. 2d 450, 473, 289 N.W.2d 570 (1980). Therefore, evidentiary presumptions in a jury charge that relieve the state of its duty to prove each element beyond a reasonable doubt violate the due process rights of the accused. *Muller,* 94 Wis. 2d at 473-74; *Francis v. Franklin,* 471 U.S. 307, 313 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 520-24 (1979).

A mandatory presumption instructs the jury that it must find the elemental fact if the state proves certain

predicate facts. *Muller,* 94 Wis. 2d at 475; *Francis,* 471 U.S. at 314. A mandatory presumption that is irrebuttable is conclusive. Thus, a mandatory conclusive presumption relieves the state of its burden of persuasion by removing the presumed element from the case entirely if the state proves the predicate facts. *Muller,* 94 Wis. 2d at 475; *Francis,* 471 U.S. at 314 n.2. If a specific portion of the jury charge, considered in isolation, could have been understood by reasonable jurors as creating a conclusive presumption, the potentially offending words must be considered in the context of the instruction as a whole to discern if other instructions adequately explain the infirm language and negate the unconstitutional presumption. *Carella v. California,* 109 S. Ct. 2419, 2420 (1989); *Francis,* 471 U.S. at 315.

Mandatory conclusive presumptions are impermissible because in addition to " 'overriding [the] presumption of innocence with which the law endows the accused,' " *Carella,* 109 S. Ct. at 2421 (Scalia, J., concurring (quoting *Sandstrom,* 442 U.S. at 523)), such presumptions " 'invade [the] fact-finding function' which in a criminal case the law assigns solely to the jury." *Carella* at 2422 (Scalia, J., concurring). It is beyond dispute that proof of all essential elements must be tendered to the jury. *State v. McAllister,* 107 Wis. 2d 532, 533, 319 N.W.2d 865 (1982). "An erroneous presumption on a disputed element of the crime renders irrelevant the evidence on the issue because the jury may have relied upon the presumption rather than upon that evidence." *Connecticut v. Johnson,* 460 U.S. 73, 85 (1983) (plurality opinion).

The defendant is correct in his assertion that the instruction "[a] mobile home is a building" is a

mandatory conclusive presumption regarding an element of the charge of arson under sec. 943.02, Stats. The State is required to prove beyond a reasonable doubt that the structure in question is a "building." The instruction given requires the jury to find the State has proved that element if it finds that the State has proved beyond a reasonable doubt that the structure is a mobile home. Proof of the predicate fact that a mobile home has been damaged by fire requires the jury to conclusively presume that an element of the arson offense has been proved. The instruction as a whole did not negate this conclusive presumption.

Contrary to the State's position, this instruction is not similar to that given in *Childs.* In *Childs,* the circuit court gave the ordinary and common meaning of an undefined term in the statute. It remained for the jury to find that the conduct had occurred. The analogous situation in this case would have been for the circuit court to define "building," but not make its own conclusions as to what types of structures are buildings. Whether a certain structure is a "building" is a question of fact that the jury alone must decide.

■■■

Nevertheless, a mandatory conclusive presumption is not the equivalent of a directed verdict for the state and is subject to the harmless error rule. *Carella,* 109 S. Ct. at 2421. As Justice Scalia emphasized in his concurring opinion in *Carella,* 109 S. Ct. at 2423, the "use of conclusive presumptions [can] be harmless error only in those 'rare situations' when 'the reviewing court can be confident that [such an] error did not play any role in the jury's verdict.' " (quoting *Connecticut v. Johnson,* 460 U.S. 73 (1983) (plurality opinion)).

Justice Scalia's thorough examination of the application of the harmless error rule to conclusive presump-

tions in *Carella* merits careful consideration where, as here, the jury instructions created a conclusive presumption regarding an element of the crime. Justice Scalia emphasizes that courts must recognize that:

> the harmless-error analysis applicable in assessing a mandatory conclusive presumption is wholly unlike the typical form of such analysis. In the usual case the harmlessness determination requires consideration of 'the trial record as a whole,' *United States v. Hasting,* 461 U.S. 499 (1983), in order to decide whether the fact supported by improperly admitted evidence was in any event overwhelmingly established by other evidence. (Citations omitted.) Such an expansive inquiry would be error [when assessing whether a conclusive presumption is harmless error] . . .. 109 S. Ct. at 2421 (Scalia, J., concurring).

\* \* \*

> '[T]he question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials.' *Bollenbach v. United States,* 326 U.S. 607 (1946). 'Findings made by a judge cannot cure deficiencies in the jury's findings as to the guilt or innocence of a defendant resulting from the court's failure to instruct it to find an element of the crime.' *Cabana v. Bulloch,* 474 U.S. 376, 384–85 (1986). *Id.* at 2422.

Justice Scalia suggests three situations in which he could conceive of harmless error applying to a conclusive presumption. *Id.* at 2423. Among those "rare situations" would be "an instruction establishing a conclusive presumption on a charge of which the defendant was acquitted (and not affecting other charges), and an instruction

establishing a conclusive presumption with regard to an element of the crime that the defendant [has] admitted." *Id.* at 2423. The other situation may present itself when:

> the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding the element required to be presumed. The error is harmless because it is 'beyond a reasonable doubt,' *Chapman v. California,* 386 U.S. 18, 24 (1967), that the jury found the facts necessary to support the conviction. *Id.*

The instruction in this case fits within Scalia's final example. The instruction did not play any role in the jury's findings of fact regarding its conclusion that the structure damaged by fire was a building. The jury was instructed that "[a] mobile home is a building"; it was not instructed that "a mobile home is a building and this structure was a mobile home." It remained for the jury to find that the structure in question was a mobile home.

We conclude that no rational jury could plausibly find that the structure in question was a mobile home without also finding that the structure was a building. As this court has noted, the common usage of nontechnical words may be established by using the dictionary definition of the word. *See State v. Ehlenfeldt,* 94 Wis. 2d 347, 356, 288 N.W.2d 786 (1980). The Random House Dictionary of the English Language (2d ed. 1987), defines "mobile home" as "a large house trailer designed for year round living in one place." If the jury found this structure to be a mobile home, as that term is commonly understood, this finding would be the "functional equivalent" of finding that the structure was a building.

The evidence, which included photographs of the structure and testimony that there was a permanent porch affixed to the trailer, supports the jury's finding that this structure was a mobile home and not something else such as a motor home. Under these circumstances, we are confident that the mandatory conclusive presumption did not play any role in the jury's verdict and the instruction was, therefore, harmless error.

*Impeachment by Illegally Obtained Statements*

At a *Goodchild* hearing, *see State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 133 N.W.2d 753 (1965), *cert. denied,* 384 U.S. 1017 (1965), prior to the prosecutor's cross-examination of Kuntz, the circuit court ruled that Kuntz's custodial statement was admissible for impeachment purposes because it satisfied the voluntariness and trustworthiness requirements of *Wold v. State,* 57 Wis. 2d 344, 204 N.W.2d 482 (1973). The circuit court did not address whether the police obtained Kuntz's statements in violation of *Miranda,* 384 U.S. 436, or *Edwards v. Arizona,* 451 U.S. 477 (1981), *reh'g denied,* 452 U.S. 973 (1981). We proceed, as the court of appeals did in this case, by assuming without deciding that the statements were in violation of *Miranda.*

Kuntz asserts that the presumably illegally obtained statement was used by the prosecution in its cross-examination of him to impeach the testimony of a prosecution witness, Beverly Salmon, and thereby violated his due process rights. Kuntz relies on the Supreme Court's recent decision in *James v. Illinois,* 110 S. Ct. 648, 650 (1990), which held that the impeachment exception, which permits the prosecution to introduce illegally obtained evidence to impeach the defendant's own testi-

mony, does not permit illegally obtained evidence to be used to impeach defense witnesses.

The defendant argues that the statement contradicts Salmon's testimony that she, and not Kuntz, had suggested going for a ride and taking back roads when they drove to Beloit and Milwaukee on the night of the murder. Kuntz asserts that this statement was crucial to the closing argument made by the prosecutor that the defendant's contact with Salmon demonstrated the defendant's plan to create an alibi, get rid of incriminating evidence, and flee the scene of the crime.

The State agrees with Kuntz's characterization of the evidence. The State argues, however, that the statement was admissible under the impeachment exception because *James* applies only to defense witnesses and not prosecution witnesses.

We find that the record does not support the conclusion that the admitted statement impeached Salmon's testimony and, therefore, we do not address the issue of whether the Court's rationale in *James* applies equally to prosecution witnesses. Nothing in Kuntz's statement to the police, nor in his testimony, can be characterized as disputing Salmon's testimony.

On cross-examination of Kuntz, the following exchange took place which is relied upon by Kuntz for his assertion:

Q: Do you remember telling Investigator Meyer during that same interview that when you got to Salmon's house you told her you wanted to take a ride, and that you wanted to take her car and you didn't want to drive; do you remember saying that?

A: Yes, I do, that was after I was sitting inside the car.

Salmon had testified earlier, as a prosecution witness, that on the night of the murder, she had returned home at about 10 p.m. to find Kuntz waiting for her in his truck. Salmon testified that she had asked Kuntz to get in her car. The examination then proceeded as follows:

Q: What conversation did you have, —what did Mr. Kuntz say and what did you say?

A: Well, I think I said to him, I said: You're out here, And he said: Yeah, he came out to the house and he was waiting for me to come home because when he was at his place I wasn't at his place.

Q: What did you say?

A: And I said what — I kind of asked him what he wanted to do, and he wanted to go check on the lottery tickets because they had, you know, the lottery had rolled over a few times.

Q: Did you — Before you got to the discussion of the lottery, did you say that you were going to take a drive?

A: Mm-hmm (indicating affirmative response).

Q: And after that —

A: He asked me if I wanted to go for a ride, and I said: Why not.

On cross-examination, Salmon testified as follows:

Q: Was there anything — And I want to ask you a question. You indicate you took the back roads when you headed to Illinois. Why did you take back roads?

A: I didn't know. I just chose to take back roads.

Q: Did Harold tell you, listen —

A: No, Harold had nothing to do with it. I'm the one that suggested it. I go the back roads many places many times.

Q: And when you testified: I'll take you on roads that you have never been on going to Milwaukee, did Harold ask you to take different roads or backwood roads?

A: No. When I left South Beloit, I just said to him, I said: You want to go for a ride, I said: I'll take you on roads you have never been before.

As the excerpts of the relevant portions of Kuntz's and Beverly Salmon's testimony indicate, nothing in the illegally obtained statement of the defendant that was admitted contradicts Salmon's testimony or calls into question her credibility. The crucial piece of information concerns who wanted to take a ride. Both Salmon's testimony and the defendant's illegally obtained statement acknowledge that Kuntz suggested they go for a ride. Nor can it be said that Kuntz's illegally obtained statement carried any weight as direct evidence. Kuntz, in his direct testimony, indicated that the first thing he had said to Salmon was, "Hi, how about going for a ride and check out the numbers." At most the direct evidence provided by Kuntz's illegally obtained statement was cumulative. Any error was harmless beyond a reasonable doubt.

### Other-Acts Evidence

The third issue is whether the defendant was unfairly prejudiced by prosecution evidence of uncharged misconduct involving arson by the defendant eleven and sixteen years before the charged offense occurred. Prior to trial, the circuit court ruled that the testimony of

Kuntz's ex-wife Elvetta Kuntz concerning these events was admissible to show identity and motive. The court of appeals found that although Elvetta Kuntz's testimony was admissible to show identity, the prejudicial nature of her testimony substantially outweighed its probative value and it was, therefore, error to admit this evidence. Nevertheless, the court of appeals found that the error was harmless. We conclude that the circuit court's admission of this evidence to show identity and its determination that the probative value of the evidence was not substantially outweighed by its prejudicial value did not constitute an abuse of discretion.

Elvetta Kuntz testified that in 1971, soon after the defendant had separated from his first wife, he expressed his intention on more than one occasion to set fire to his first wife's house. She further testified that on one occasion that year, she had woken up during the night to find Kuntz fully dressed in dark clothes. He told her that he was going to set his first wife's house on fire, but she talked him out of it. Elvetta Kuntz also testified that in 1976 she had returned to the defendant after a brief separation and found her furniture missing. The defendant told her he had gotten mad and made a bonfire out of her and her children's belongings.

In reviewing evidentiary issues, " 'the question on appeal is not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in, but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record.' " *State v. Alsteen,* 108 Wis. 2d 723, 727, 324 N.W.2d 426 (1982) (quoting *State v. Wollman,* 86 Wis. 2d 459, 464, 273 N.W.2d 225 (1979)). If there exists a reasonable basis for the trial

court's determination, this court will uphold the trial court's ruling. *Id.*

The admissibility of evidence of prior bad acts is controlled by a two prong test. *State v. Friedrich,* 135 Wis. 2d 1, 19, 398 N.W.2d 763 (1987); *State v. Danforth,* 129 Wis. 2d 187, 202, 385 N.W.2d 125 (1986); *State v. Fishnick,* 127 Wis. 2d 247, 378 N.W.2d 272 (1985). First, the circuit court must find that the evidence is admissible under sec. 904.04(2), Stats., which provides:

> OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

If the circuit court finds that the evidence of prior bad acts is admissible under a sec. 904.04(2) exception, then it must consider whether the probative value of the evidence is substantially outweighed by the prejudicial value of the evidence. Section 904.03. As with all evidence, the evidence of prior bad acts must also be relevant to be admissible. Section 904.02.

To be admissible for the purpose of identity, the other-acts evidence should have such a concurrence of common features and so many points of similarity with the crime charged that it "can reasonably be said that the other acts and the present act constitute the imprint of the defendant." *Fishnick,* 127 Wis. 2d at 263–64. The threshold measure for similarity with regard to identity is nearness of time, place, and circumstance of the other

act to the crime alleged. *Id.* at 264, n.7. Whether there is a concurrence of common features is generally left to the sound discretion of the trial courts. *Id.*

The State identifies five features common to the circumstances of this arson and the other-acts about which Kuntz's ex-wife testified. In each instance: 1) the marriage had apparently ended; 2) the wife had left the defendant; 3) the house or household goods of the wife were targeted for destruction by Kuntz; 4) Kuntz used or threatened to use fire as the means of attack; and 5) the victim was the estranged wife.

Given these multiple points of congruence, the circuit court had a rational basis for concluding that the other-acts evidence was relevant to the issue of identity in view of the similarities in the conduct of the defendant in each instance. As the State noted, the circumstances in each case were strikingly similar. The threat to use fire that was made in each case is a very unusual threat to make.

The defendant contends, however, that the prior acts were so remote in time "to negative all rational or logical connection between the fact sought to be proved and the remote evidence offered in proof thereof." *Sanford v. State,* 76 Wis. 2d 72, 81, 250 N.W.2d 348 (1977). Although the other-acts here were distant in time, that does not end the inquiry. A person is seldom placed in the position of facing the end of his marriage. In considering time, we must take into account, in a case such as this, not only the time that has passed, but also the opportunities presented over that period for the defendant to repeat the acts. *See Sanford,* 76 Wis. 2d at 82. Because it is the break up of a marriage that apparently triggered Kuntz's arson-oriented acts, the defendant had few "opportunities to repeat" this conduct during the

sixteen years between the most remote acts. Accordingly, we uphold the circuit court's ruling to admit the other-acts evidence for the purpose of identity because there was no abuse of discretion. The circumstances in each instance were strikingly similar and the other-acts were not so remote to attenuate all rational or logical connection between the acts.

The second prong of the test for the admissibility of other-acts evidence requires circuit courts to consider and determine " 'whether the prejudice of other-crimes evidence is so great as compared with its relevancy and the necessity for its admission in the particular case as to require its exclusion.' " *Sanford,* 76 Wis. 2d at 82 (quoting *Whitty v. State,* 34 Wis. 2d 278, 292, 149 N.W.2d 557, 563 (1967)). Although the circuit court did not go into detail as to how it arrived at its finding, the transcript reflects that the court did weigh the probative and prejudicial value of the evidence before making its determination. The circuit court stated:

> I agree that there is some high prejudice involved here. I also believe it's highly probative because of the very similar circumstances which have existed in these acts and their relationship to the breakup of other relationships of the defendant and, therefore, the court will permit the testimony . . ..

> \* \* \*

> [T]he court has to make the prejudicial/probative dichotomy. Now anything that's very highly probative may be very highly prejudicial. I believe this is, but I believe that it's something that is necessary in this situation, though it is fairly highly prejudicial. It is also highly probative because of the unique similar-

748

ities in the matter — manner in which the defendant approached the problems with which he was faced.

The court of appeals concluded that the circuit court did not explicitly conduct the required weighing of the probative and prejudicial value of the evidence and conducted its own weighing as in *State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983). We conclude that the circuit court's weighing was adequate and, therefore, we only consider whether the court abused its discretion in making its finding.

When other-acts evidence is admitted to show identity, courts must be wary of the danger that the jury will convict the accused on improper considerations such as a belief that because the defendant committed one bad act, he necessarily committed the charged offense. *See Fishnick*, 127 Wis. 2d at 261–62; *Alsteen*, 108 Wis. 2d at 728–29; *Whitty*, 34 Wis. 2d at 292. The standards of probativeness and relevancy are stricter when other-acts evidence is used to show identity because of the greater prejudice that usually accompanies such evidence. *Fishnick*, 127 Wis. 2d at 264; *Whitty*, 34 Wis. 2d at 294.

Nevertheless, we cannot say the circuit court abused its discretion when it considered the prejudice that would result from this evidence. The court recognized that the evidence was highly prejudicial, but also found that the evidence had a great deal of probative value due to the striking similarities in each case. Under these circumstances, it was not an abuse of discretion for the circuit court to conclude that the prejudice of the evidence did not substantially outweigh the probative value.

## Impeachment by Prior Misdemeanor Convictions

The next issue is whether the defendant was unfairly prejudiced by having his testimony impeached on the basis of a prior misdemeanor conviction not involving dishonesty. The court of appeals held that the circuit court did not abuse its discretion by admitting Kuntz's prior conviction for purposes of impeachment. We agree. The Wisconsin Rules of Evidence, as a general rule, permit evidence of conviction of a crime to attack the credibility of a witness.

Kuntz's prior conviction in 1983 for reckless use of a weapon did not involve dishonesty, but was admitted for impeachment purposes. Kuntz also had allegedly been convicted of carrying a concealed weapon and battery in 1970, but the circuit court determined that these convictions were to remote to be admissible. The only inquiry made by the State into Kuntz's 1983 conviction was asking Kuntz if he had ever been convicted of a crime. Kuntz answered "yes." No further information regarding the conviction was presented by the State. The Wisconsin Rules of Evidence, unlike the Federal Rules, do not prohibit the use of prior misdemeanor convictions that do not involve dishonesty. Section 906.09, Stats., states:

> **Impeachment by evidence of conviction of crime.**
> **(1)** GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible. The party cross-examining him is not concluded by his answer.
> **(2)** EXCLUSION. Evidence of a conviction of a crime may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

The Judicial Council Committee Note to this section acknowledges that the Wisconsin Rule is "a substantial alteration of the Federal Rule." Judicial Council Committee's Note, Wis. R. Evid., 59 Wis. 2d Rp., R177 (1974).

Nevertheless, the defendant argues that the Judicial Council Committee Note indicates that the committee intended to embrace the principles behind the federal limitations, but not the specific procedure. In support of this claim, the defendant cites the Committee's statement that the Federal Rule's "strict limitations upon the use of a criminal conviction makes the Rule administratively impractical. The limitations are appropriate, but they should be considered by the judge in applying sub. (2)." *Id.* The defendant contends that this language indicates that the Council intended to emulate the Federal Rule by creating a presumption that misdemeanor offenses which do not involve dishonesty are inadmissible, while avoiding the inflexibility of the absolute prohibition of the Federal Rule. Therefore, defendant asserts, prior misdemeanor convictions not involving dishonesty should only be admitted under special circumstances.

The defendant also argues that policy compels the conclusion that convictions not related to dishonesty should be excluded under sub. (2) because their prejudicial value substantially outweighs the probative value. The defendant contends that the " 'rule of thumb' thus should be that conviction which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not . . .." *Gordon v. United States,* 383 F.2d 936, 940 (D.C. Cir. 1967).

Wisconsin, however, has not adopted this policy. The language of sec. 906.09, Stats., indicates the intention that all criminal convictions be generally admissible

751

for impeachment purposes. The statute reflects the long-standing view in Wisconsin that "one who has been convicted of a crime is less likely to be a truthful witness than one who has not been convicted." *Nicholas v. State,* 49 Wis. 2d 683, 688, 183 N.W.2d 11, 14 (1971). Furthermore, the prejudice that may accompany introducing past misdemeanor convictions which do not involve dishonesty is mitigated by the restrictions placed on the scope of the inquiry into the past convictions. *Id.* at 688–89. The examiner may only ask the witness if he has ever been convicted of a crime and if so how many times. *State v. Rutchik,* 116 Wis. 2d 61, 76, 341 N.W.2d 639 (1984); *Nicholas,* 49 Wis. 2d at 689. If the witness's answers are truthful and accurate, then no further inquiry may be made. *Moore v. State,* 83 Wis. 2d 285, 295, 265 N.W.2d 540 (1978); *Nicholas,* 49 Wis. 2d at 689.

Given the limited inquiry into the defendant's prior conviction, we do not believe that the defendant was unduly prejudiced by the circuit court's decision to permit the introduction of this evidence. Whether a prior conviction involves dishonesty is, of course, a relevant consideration to admissibility. As the Judicial Council Committee's Note emphasizes:

> a judge should consider whether from the lapse of time since the conviction, the rehabilitation or pardon of the person convicted, the gravity of the crime, the involvement of dishonesty or false statement in the crime, the elements noted in *Luck v. United States,* [121 U.S. App. D.C. 151, 348 F. 2d 763 (1965)], and *Gordon v. United States,* 127 U.S. App. D.C. 343, 383 F.2d 936 (1967), the probative value of the evidence of the crime is substantially outweighed by the danger of undue prejudice. Judicial Council Committee's Note, 59 Wis. 2d at R181.

In view of the general rule of sec. 906.09(1), Stats., however, the presumption remains that any prior misdemeanor conviction is relevant to the credibility of a witness's testimony. Although convictions involving dishonesty are more probative of credibility than those that do not, Wisconsin law presumes that all criminal convictions have some probative value regarding truthfulness. None of the other prejudicial factors to be considered apply to this case. Accordingly, the circuit court did not abuse its discretion in admitting the conviction for reckless use of a weapon.

### Multiple Punishments for the Same Offense

The final issue is whether Kuntz's convictions and sentences for both burglary/battery, contrary to sec. 943.10(2)(d), Stats., and first-degree murder, contrary to sec. 940.01, violated his constitutional right to be free from multiple punishments for the same offense. The court of appeals affirmed Kuntz's punishments for both offenses, holding that burglary/battery is not a lesser included crime of first-degree murder. We conclude that because the legislature intended to permit convictions for both burglary/battery and first-degree murder, Kuntz's sentence was not unconstitutional.

The federal and state constitutions prohibit multiple punishments for the same offense. U.S. Const. amend V; Wis. Const. art. I, sec. 8. The scope of the protection is governed by the interpretation of the words "same offense." *State v. Gordon,* 111 Wis. 2d 133, 137, 330 N.W.2d 564 (1983). Whether two statutes proscribe the "same offense" is determined by discerning whether the legislature intended to impose cumulative punish-

ments under each statute. *Id.; Missouri v. Hunter,* 459 U.S. 359, 367 (1983); Note, *Multiple Punishment in Wisconsin and the Wolske Decision,* 1990 Wis. L. Rev. 553, 557–59. If the legislature did not intend to permit cumulative punishments, then punishment for both offenses is unconstitutional. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Hunter,* 459 U.S. at 366.

Therefore, in order to determine whether punishment for both burglary/battery and first-degree murder is constitutionally permissible, we must discern whether the legislature intended to permit convictions for both offenses when they arise out of the same criminal transaction. We note at the outset that the legislature permits prosecution under more than one statute for the same conduct. Section 939.65, Stats.

This court primarily relies on Wisconsin's lesser included offense statute, sec. 939.66, Stats., to discern whether the legislature intended multiple punishments. *Gordon,* 111 Wis. 2d at 140–41; Note, 1990 Wis. L. Rev. at 559. This statute precludes conviction under more than one statute for the same criminal act if one crime is an included crime of the other. Section 939.66(1) codifies the *Blockburger,* 284 U.S. 299 (1932) or "elements only," test, which is the established rule of statutory construction in Wisconsin for determining whether the legislature has authorized multiple punishments. *Gordon,* 111 Wis. 2d at 138–39.

Under the "elements only" test, an " 'offense is a 'lesser included' one only if all of its statutory elements can be demonstrated without proof of any fact or element in addition to those which must be proved for the

'greater' offense.' " *State v. Carrington,* 134 Wis. 2d 260, 265, 397 N.W.2d 484 (1986) (quoting *State v. Hagenkord,* 100 Wis. 2d 452, 481, 302 N.W.2d 421 (1981)). "[A]n offense is not a lesser-included one if it contains an additional statutory element." *Id.* (quoting *Hagenkord,* 100 Wis. 2d at 481). If one of the charged offenses is not considered a lesser included offense of the other, then this court will find that the legislature intended to permit cumulative punishments for both offenses unless other factors clearly indicate a contrary intent. *See Missouri v. Hunter,* 459 U.S. at 367; *Albernaz v. United States,* 450 U.S. 333, 340 (1981).

The defendant claims that multiple punishments for battery/burglary and first-degree murder are impermissible because a battery within the meaning of sec. 943.10(2)(d), Stats., requires proof of no element not otherwise contained within the first-degree murder statute. The defendant analogizes this case to *Gordon,* 111 Wis. 2d 133, in which this court found that convictions for kidnapping and felony murder resulted in multiple punishments for the same offense because kidnapping was a lesser included crime of felony murder. The defendant claims that because the physical acts that are alleged to comprise the battery portion of his burglary/ battery charge are the same as those alleged to comprise the murder charge, the case is similar to *Gordon* in which the physical acts that comprised the felony portion of the felony murder also comprised the kidnapping.

In *Gordon,* we determined that kidnapping was a lesser included offense of felony murder because: "Proof of second-degree felony-murder under sec. 940.02(2) requires proof of all the elements of kidnapping and requires proof of additional elements, namely that the death of another human being was caused as a natural and probable consequence of the commission of or

attempt to commit the kidnapping, and proof of kidnapping does not require proof of any element which is not necessary to prove the second-degree murder charge." *Gordon,* 111 Wis. 2d at 135.

We find the defendant's analogy to *Gordon* unpersuasive because proof of burglary/battery requires proof of elements in addition to those required to prove first-degree murder and first-degree murder requires proof of elements not required to prove burglary/battery. The burglary portion of the burglary/battery offense requires proof that the defendant intentionally entered a building or dwelling; that the defendant's entry of the building or dwelling was without the consent of a person in lawful possession and the defendant knew the entry was without consent; and that the defendant entered the building or dwelling with intent to commit a felony. *See* Wis JI—Criminal 1424 (1966). These elements are not required to prove first-degree murder. First-degree murder requires proof that the accused caused the death of another human being and that the accused intended to kill. Neither of these elements is required to prove burglary/battery. Therefore, under the "elements only" test applied in Wisconsin, first-degree murder is not a lesser included offense of burglary/battery and vice-versa. Consequently, absent a clear indication of legislative intent to the contrary, punishment for both offenses is constitutionally permissible.

Other factors that may indicate a contrary legislative intent regarding multiple punishment are the language of the statutes, the legislative history, the nature of the proscribed conduct, and the appropriateness of multiple punishment. *See Manson v. State,* 101 Wis. 2d 413, 422, 304 N.W.2d 729, 734 (1981); *State v.*

*Bohacheff,* 114 Wis. 2d 402, 338 N.W.2d 466 (1983). None of these factors indicate a contrary legislative intent in this case. To the contrary, examination of these factors indicates that the statutes protect distinct interests of the public. The burglary statutes, including the aggravated situation in which a battery occurs within the burglarized building or dwelling, are directed at protecting the public's security in their enclosed property. The homicide statutes protect life and bodily security. Cumulative punishments protect these distinct interests of the public.

Application of the "elements only" test indicates that the legislature intended to permit cumulative punishments for first-degree murder and burglary/battery. Because other factors do not clearly indicate a contrary legislative intent, we conclude that Kuntz's convictions for both offenses did not violate his right to be free from multiple punishments for the same offense.

### Conclusion

For the reasons set forth, we affirm the court of appeals' decision affirming Harold Kuntz's convictions for first-degree murder and burglary/battery. We also conclude that the circuit court's erroneous jury instruction on the arson charge was harmless error. Therefore, we reverse the court of appeals' decision on this issue and affirm the judgment of conviction for arson entered by the circuit court.

*By the Court.*—The decision of the court of appeals is reversed in part and affirmed in part and the judgment of the circuit court is affirmed.