STATE of Wisconsin, Plaintiff-Respondent,

v.

Curtis J. DAUER, Defendant-Appellant.†

Court of Appeals

*No. 92-1920-CR. Submitted on briefs December 18, 1992.—Decided February 3, 1993.*

(Also reported in 497 N.W.2d 766.)

†Petition to review denied.

420

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael J. Fitzgerald* of *Coffey, Coffey & Geraghty* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Stephen W. Kleinmaier,* assistant attorney general.

Before Brown, Anderson and Snyder, JJ.

BROWN, J.   Curtis J. Dauer appeals from a judgment convicting him of one count of armed robbery and one count of extortion. The trial court submitted the extortion and armed robbery counts to the jury and denied Dauer's request to instruct the jury regarding the lesser included offense of misdemeanor theft. We address two issues on appeal. The first issue is whether the extortion and armed robbery convictions are multiplicitous and subject Dauer to double jeopardy. The second issue is whether the trial court committed reversible error by denying Dauer's request to instruct the jury on the lesser included offense of misdemeanor theft. We hold that Dauer's convictions do not violate double jeopardy. We also hold that any error resulting from the trial court's refusal to give the misdemeanor theft instruction was harmless. We therefore affirm the judgment in its entirety.

Daniel Radermacher supplied the state's version of the events leading to Dauer's conviction. Radermacher testified that he encountered Dauer at a tavern on the evening of February 10, 1991. Shortly thereafter, Radermacher invited Dauer to his house to shoot pool and to pick up some money with which to return downtown later that evening. They left the bar together and proceeded to Radermacher's home. When they reached Radermacher's home, Radermacher took some money out of his safe. Dauer then asked for a ride to Slinger.

As they drove toward Slinger, Dauer asked Radermacher to drive him to Milwaukee instead. Dauer promised that he could get Radermacher "some girls" and "some coke" in Milwaukee. He gave Radermacher directions to an apartment in Milwaukee. When they arrived at the apartment, Dauer told Radermacher to wait for him. Radermacher waited for Dauer, who never reappeared. Consequently, Radermacher left without Dauer.

On the evening of February 11, Dauer went to Radermacher's home. According to Radermacher, Dauer accused him of taking cocaine on February 10 without paying for it. Dauer then stated that the man who supposedly sold Radermacher the cocaine wanted his $110. Dauer threatened that if Radermacher did not come up with the money, the black man in the car would "shoot his [Radermacher's] ass." Dauer then told Radermacher to take him to the safe. As he passed the window, Radermacher tried to see whether anyone was in Dauer's car. However, Radermacher could not clearly see the inside of the car.

Radermacher gave Dauer $60 from his wallet and $210 from the safe. Dauer took the money and gave Radermacher a fake phone number to call. He claimed that the number was for the man who had supposedly sold Radermacher cocaine on February 10. Dauer then warned Radermacher that if he reported this incident to the police, Radermacher's child would be taken away because of his past criminal record.

Dauer's description of what happened on February 11 differs from Radermacher's in significant respects. Dauer testified that he got a ride into Washington county from a man on the north side of Milwaukee and then stopped at the tavern to get directions to Radermacher's home. Curtis Knaack offered to show him where Radermacher lived. When Dauer reached Rader-

macher's home, he explained to Radermacher that he had been ripped off at the apartment in Milwaukee the previous night. Radermacher then asked Dauer whether Dauer knew any other source for cocaine. Dauer said that he could get some cocaine for $100 and gave Radermacher a fake telephone number as assurance that he would return with the cocaine. He testified that Radermacher gave him $100, but that he never had any intention of getting Radermacher any cocaine. He denied making any threat to Radermacher about guns or a black man in the car.

Three charges were issued against Dauer: (1) one count of extortion as a repeater in violation of secs. 943.30(1), 939.50(3)(d) and 939.62(2), Stats. (Count I); (2) one count of armed robbery in violation of secs. 943.32(1)(b), (2) and 939.50(3)(b), Stats. (Count II); and (3) one count of bailjumping as a repeater in violation of secs. 946.49(1)(a), 939.51(3)(a) and 939.62(2), Stats. (Count III). Dauer appeals from his convictions on Counts I and II.

■

We first consider whether Dauer's convictions for both armed robbery and extortion subject him to double jeopardy.[1] Whether multiple charges violate constitutional protections is a question of law that we review *de novo* without deference to the trial court. *State v. Kanarowski*, 170 Wis. 2d 504, 509, 489 N.W.2d 660, 662 (Ct. App. 1992).

---

[1] The United States Constitution states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . .." U.S. CONST. amend. V. Likewise, article I, section 8 of the Wisconsin Constitution states: "[N]o person for the same offense may be put twice in jeopardy of punishment . . .."

Wisconsin employs a two-pronged test for determining whether multiple convictions violate the double jeopardy clause. *See id.* at 512, 489 N.W.2d at 663. First, we must decide whether the convictions comply with the "elements only" test set out in *Blockburger v. United States,* 284 U.S. 299 (1932).[2] *See State v. Sauceda,* 168 Wis. 2d 486, 493–95, 485 N.W.2d 1, 4 (1992); *Kanarowski,* 170 Wis. 2d at 512, 489 N.W.2d at 663. If neither offense is a lesser included offense of the other, the presumption arises that the legislature intended to allow multiple convictions. *See State v. Kuntz,* 160 Wis. 2d 722, 755, 467 N.W.2d 531, 544 (1991). We then consider other factors to determine whether the presumption raised by the first prong has been rebutted. *See Sauceda,* 168 Wis. 2d at 495, 485 N.W.2d at 5.

Under the "elements only' test, an offense is a lesser included one " 'only if all of its statutory elements can be demonstrated without proof of any fact or element in addition to those which must be provided for the 'greater' offense.' " *Kuntz,* 160 Wis. 2d at 754–55, 467 N.W.2d at 544 (citations omitted) (quoted in *Sauceda,* 168 Wis. 2d at 494–95, 485 N.W.2d at 4). For an offense to constitute a lesser included offense "it must be 'utterly

---

[2] The "elements only" test is codified in sec. 939.66(1), Stats., which states in pertinent part:

> **Conviction of included crime permitted.** Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:
>     **(1)**   A crime which does not require proof of any fact in addition to those which must be proved for the crime charged.

*State v. Sauceda,* 168 Wis. 2d 486, 493 & n.8, 485 N.W.2d 1, 4 (1992).

impossible' to commit the greater crime without committing the lesser." *Randolph v. State,* 83 Wis. 2d 630, 645, 266 N.W.2d 334, 341 (1978) (citation omitted).

Our analysis begins with a side-by-side comparison of the statutes involved. *See State v. Carrington,* 134 Wis. 2d 260, 265–66, 397 N.W.2d 484, 487 (1986). Extortion is committed if a person

> *either verbally or by any written or printed communication* . . . threatens or commits any injury to the person . . . of another, with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do any act against the person's will or omit to do any lawful act . . .. [Emphasis added.]

Section 943.30(1), Stats. In comparison, a person commits robbery if he or she, "with intent to steal, takes property from the person or presence of the owner . . . [b]y threatening the imminent use of force against the person of the owner . . . with intent thereby to compel the owner to acquiesce in the taking . . . of the property." Section 943.32(1)(b), Stats.

Dauer concedes that robbery requires additional elements that extortion does not.[3] However, he argues that extortion is a lesser included offense of robbery. He

---

[3] Although it is not necessary to our decision, we agree that robbery by threat of use of force is not a lesser included offense of extortion. First, robbery requires possession and asportation of the property by the perpetrator. Section 943.32(1)(b), Stats. In contrast, extortion requires only the intent to extort money or pecuniary advantage. Section 943.30(1), Stats. Second, robbery requires threat of *imminent* use of force. Section 943.32(1)(b). In contrast, the threat of force in extortion need not be imminent. Section 943.30(1).

claims that one cannot possibly commit extortion without also committing part of a robbery. Therefore, Dauer concludes that the *Blockburger* test is not satisfied. He urges us to reverse his convictions on this basis.

We disagree with Dauer. Extortion is not a lesser included offense of robbery. Extortion requires proof of a threat made by *verbal, written or printed communication.* In contrast, the robbery statute requires a threat but does not specify that the threat be verbal, written or printed. Thus, extortion requires proof of facts in addition to those required for robbery.

Dauer concedes "that both the crime of armed robbery and the crime of extortion can be committed in a number of different ways and a defendant, under some circumstances, could be convicted of both without offending the principles of double jeopardy." However, he argues that because he threatened Radermacher verbally, he could not have committed the robbery without also committing extortion.

When applying the elements only test, the unique facts of a given defendant's crime are irrelevant. *See Hagenkord v. State,* 100 Wis. 2d 452, 487–88, 302 N.W.2d 421, 439 (1981). We must look only to the statutorily defined elements of the respective crimes. *Id.* Although it may have been "utterly impossible" for Dauer to commit *his* robbery without committing extortion, the statutes allow for a robbery to occur in which the defendant uses nonverbal threats and thus avoids committing extortion. *See State v. Powers,* 66 Wis. 2d 84, 90, 224 N.W.2d 206, 209 (1974) (grabbing victim from behind, holding his head back, pulling his hair and holding an object to his throat while saying "give us your money" constitutes threat of imminent use of force). We conclude that the *Blockburger* test is satisfied and pre-

428

sume that the legislature intended to allow contemporaneous convictions for robbery and extortion.

We now move to the second part of our analysis, which involves inquiry into other factors that would evidence a legislative intent not to permit cumulative punishment. *Sauceda*, 168 Wis. 2d at 495, 485 N.W.2d at 5. These factors may include the language of the statutes, their legislative histories, the nature of the proscribed conduct, and the appropriateness of multiple punishments. *Id.* at 497, 485 N.W.2d at 5.

Dauer contends that the legislative history of sec. 943.30, Stats., evidences an intent that the legislature considered extortion to be a lesser included offense of robbery. He cites the legislative council comments to ch. 623, Laws of 1953 as authority for this proposition. Dauer claims that the 1953 comment describing threats as "written or oral, express or implied"[4] should apply to sec. 943.30. If the comment is read in conjunction with the statutory language, Dauer argues that both the robbery and the extortion statutes were meant by the legislature to apply when using a nonverbal threat. We disagree with Dauer's arguments.

The extortion statute, sec. 943.30, Stats., was originally enacted in 1849.[5] The language remained

---

[4] *See* Legislative Council Comment 1953 A.B. 100 (sec. 343.26).

[5] Chapter 133, sec. 38, Stats. (1849), states:

If any person, either verbally or by any written or printed communiciation, [sic] maliciously threaten [sic] to accuse another of any crime or offence, or shall, by any written or printed communication, maliciously threaten any injury to the person or property of another, with intent thereby to extort money, or any pecuniary advantage whatever, or with intent to compel the person so threatened to do any act against his will, he shall be punished by imprisonment in the state prison not more than one year nor less

unchanged for over a century. In 1953, the legislature enacted a bill to create a new criminal code. *See* preamble, ch. 623, Laws of 1953. In the 1953 session law, the extortion statute contained substantially different language from that of its predecessor.[6] Most significantly, the language of the proposed extortion statute did not, on its face, require a verbal, written or printed threat. The definition of threat as "written or oral, express or implied" referred to this 1953 proposal. The legislative history after 1953 reveals that the comment does not apply to the present extortion statute.

Many parts of the new criminal code, including the proposed extortion statute, did not become effective upon publication. Instead, the provisions of the act were subject to approval and amendment by the 1955 legislature, and would not become effective until passed into law by the 1955 legislature and signed by the governor. Section 282, ch. 623, Laws of 1953. The 1955 legislature

---

than six months, or by fine, not exceeding five hundred dollars nor less than one hundred dollars.

[6] The 1953 session law contained the following language:

343.26 EXTORTION.   Whoever makes any of the following threats with intent to induce the threatened person against his will to transfer to the actor or another property to which the actor knows he or such other person is not legally entitled may be fined not more than $2000 or imprisoned not more than 5 years or both:

(1)   A threat to confine or restrain or to cause bodily harm to the threatened person of another or to damage the property of the threatened person or another; or

(2)   A threat to communicate to anyone information which tends to excite adverse or derogatory feelings or opinions against the threatened person or another; or

(3)   A threat to injure the business, profession, calling or trade of the threatened person or another; or

(4)   A threat to cause the threatened person or another to be prosecuted for a crime or to give or withhold information bearing on the probable success of a prosecution.

Section 2, ch. 623, Laws of 1953.

did not pass the proposed extortion statute. In fact, the language reverted to essentially the same language as was contained in the statute prior to 1953. *See* sec. 943.30, Stats. (1955).[7] The language with which this case is concerned has survived in substantially identical form since 1955. *See* sec. 943.30(1), Stats.

We agree with Dauer that we may give weight to legislative advisory committee comments when interpreting a statute. *See State v. Stanfield,* 105 Wis. 2d 553, 561, 314 N.W.2d 339, 343 (1982), *overruled on other grounds, State v. Poellinger,* 153 Wis. 2d 493, 451 N.W.2d 752 (1990). However, Dauer asks us to interpret sec. 943.30, Stats., by reference to legislative council notes pertaining to a statute that never became effective. The comment to which he refers was in reference to statutory language that contained no restrictions on the kind of threat necessary to satisfy the statute. In contrast, the subsequently enacted language restored the specific verbal, written or printed threat requirement.

Even if we assume for the sake of this discussion that the 1953 comment is applicable to the statute's present language, we cannot agree that extortion includes nonverbal threats. If we were to apply the comment as Dauer suggests, then the verbal, written or

---

[7] Section 943.30, Stats. (1955), states:

Whoever, either verbally or by any written or printed communication, maliciously threatens to accuse another of any crime or offense, or to do any injury to the person, property, business, profession, calling or trade, or the profits and income of any business, profession, calling or trade of another, with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do any act against his will or omit to do any lawful act, may be fined not more than $2,000 or imprisoned not more than 5 years or both.

printed element would be rendered superfluous. We may not interpret statutes so as to render any of their provisions superfluous. *Donaldson v. State,* 93 Wis. 2d 306, 315, 286 N.W.2d 817, 821 (1980). Therefore, the legislative history of sec. 943.30, Stats., does not support Dauer's reading of the statutes. We hold that the legislative history does not rebut the presumption of legislative intent to allow convictions for both robbery and extortion.

Dauer next argues that because both extortion and robbery are in the chapter for crimes against property, and because both are in the subsection labeled "misappropriation," the legislature must have intended the crimes "to be similar in nature." We reject this argument. Similarity between crimes is not necessarily a basis upon which to conclude that the legislature did not intend to allow multiple punishments. Dauer cites no legal authority to support his theory, and recent case law suggests the contrary. *See Sauceda,* 168 Wis. 2d 486, 485 N.W.2d 1. In fact, it is precisely because many crimes are similar that the courts have been compelled to develop intricate methods of determining whether double jeopardy is violated.

Finally, we consider the appropriateness of multiple punishments. In this case, the extortion and robbery statutes proscribe different types of conduct. The robbery statute focuses on the taking of property; the threat of force is incidental to the taking, because without asportation, robbery cannot be committed. *See* sec. 943.32(1), Stats. In contrast, the extortion statute focuses on the threat itself and does not require that property be taken. In fact, extortion may be committed if the threat is intended to coerce the victim to transfer property to a third party. Extortion may also be commit-

ted if no property or money is transferred, but the victim is coerced to do something against his or her will. *See* sec. 943.30(1), Stats.

The difference in character between extortion and robbery supports the conclusion that multiple punishments are appropriate if both statutes are violated. Our analysis reveals no evidence that the legislature intended to preclude conviction for both robbery under sec. 943.32(1)(b), Stats., and extortion under sec. 943.30(1), Stats. We affirm the convictions.

We now address Dauer's contention that the trial court erred by refusing to instruct the jury on the lesser included offense of misdemeanor theft. We assume for the sake of this decision that the trial court erred and should have given the misdemeanor theft instruction. However, we hold that any error was harmless. The jury convicted Dauer of extortion. One necessary element of extortion is a threat of force. Therefore, by finding Dauer guilty of extortion, the jury believed Radermacher's version of the events and found that Dauer had threatened to use force. Even if both misdemeanor theft and robbery had been submitted to the jury, we infer that the jury's finding of a threat being used would apply equally to the extortion and robbery charges. For these reasons, we affirm.

*By the Court.*—Judgment affirmed.