STATE of Wisconsin, Plaintiff-Appellant,†

v.

Alexander Caleb GRUNKE, Defendant-Respondent.
[Case No. 2006AP2744-CR.]

STATE of Wisconsin, Plaintiff-Appellant,†

v.

Nicholas Owen GRUNKE, Defendant-Respondent.
[Case No. 2006AP2745-CR.]

STATE of Wisconsin, Plaintiff-Appellant,†

v.

Dustin Blake RADKE, Defendant-Respondent.
[Case No. 2006AP2746-CR.]

Court of Appeals

*Nos. 2006AP2744–CR, 2006AP2745–CR, 2006AP2746–CR.
Submitted on briefs May 7, 2007.—Decided July 26, 2007.*

2007 WI App 198

(Also reported in 738 N.W.2d 137.)

† Petition to review granted 11/5/07.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William L. Gansner*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the defendant-respondent, *Nicholas Owen Grunke*, the cause was submitted on the brief of *Suzanne Edwards* of *Law Office of Suzanne Edwards*, Dodgeville.

On behalf of the defendant-respondent, Dustin Blake Radke, the cause was submitted on the brief of *Jefren E. Olsen*, assistant state public defender of Madison.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. DYKMAN, J.    The State appeals from an order dismissing one count of attempted third-degree sexual assault contrary to Wis. Stat. § 940.225(3) (2005–06)[1] against Nicholas Grunke, Alexander Grunke, and Dustin Radke. The State asserts that the circuit court erred in concluding that § 940.225(7) allows prosecution for the sexual assault of a dead body only if the defendant committed the sexual assault in a series of acts including acts that caused the death of the victim. The State argues that § 940.225(7) unambiguously allows prosecution for the sexual assault of a dead body without limitation to the defendant's involvement in the death of the victim. We conclude that § 940.225(7) is ambiguous because it is subject to more than one reasonable interpretation. We conclude that the more reasonable interpretation is that § 940.225(7) was intended by the legislature to allow a sexual assault charge to succeed where a defendant sexually assaulted and caused the death of his victim and the sequence of events is unclear, rather than to criminalize necrophilia generally. Accordingly, we affirm.

### Background

¶ 2.    The following facts are undisputed for purposes of this appeal. In the late evening of September 2, 2006, Alexander Grunke, Nicholas Grunke, and Dustin

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

Radke went to a cemetery in Cassville, Wisconsin, intending to remove the body of L.T. from her grave so that Nicholas Grunke could engage in sexual intercourse with the corpse. The three men used shovels to reach L.T.'s grave, but were interrupted in their plans because a vehicle drove into the cemetery and they ran away.

¶ 3. The defendants[2] were charged with damage to cemetery property, contrary to WIS. STAT. § 943.012(1) and (2), attempted criminal damage to property, contrary to WIS. STAT. §§ 943.01 and 939.32, and attempted third-degree sexual assault, as a party to a crime, contrary to WIS. STAT. §§ 940.225(3), 939.05, and 939.32. After a preliminary hearing, the circuit court denied bindover for the charge of attempted third-degree sexual assault, finding that the sexual assault statute did not apply to sexual intercourse with a corpse. The State appeals.

## Discussion

¶ 4. The sole issue presented in this appeal is whether Wisconsin's sexual assault statute, WIS. STAT. § 940.225, criminalizes sexual intercourse with a corpse where the defendant was not involved in the individual's death and the corpse was already buried before the sexual act. We independently interpret a statute and determine its application to the facts of a particular case. *McNeil v. Hansen*, 2007 WI 56, ¶ 7, 300 Wis. 2d 358, 731 N.W.2d 273.

[2] Each defendant is separately represented, although their cases are consolidated on appeal. For the remainder of this opinion, we refer to the defendants collectively as "Grunke," and address the arguments raised by each without distinction.

■

¶ 5. We are obligated to interpret WIS. STAT. § 940.225 to give effect to the law as enacted by the legislature, and "to determine what the statute means so that it may be given its full, proper, and intended effect." *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. The first step in our interpretation of § 940.225 is to determine whether the statute is ambiguous. *See Kalal*, 271 Wis. 2d 633, ¶¶ 44–46. We begin with the language of the statute, and "[w]e assume that the legislature's intent is expressed in the statutory language." *Id.*, ¶ 44.

■

¶ 6. The disputed provision is WIS. STAT. § 940.225(7), which provides: "DEATH OF VICTIM. This section applies whether a victim is dead or alive at the time of the sexual contact or sexual intercourse." The State argues that the plain language of this subsection makes the entire sexual assault statute applicable whenever a defendant sexually assaults a dead body, regardless of the surrounding circumstances. While this argument is appealing on its face, our inquiry is not limited to the words in subsection (7). Instead, our reading of the plain language of subsection (7) requires that we read it "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *See Kalal*, 271 Wis. 2d 633, ¶ 46. We also examine the "scope, context, and purpose" of the statute "as long as the scope, context, and purpose are ascertainable from the text and structure of the statute itself." *Id.*, ¶ 48. It is only "[i]f this process of analysis yields a plain, clear

statutory meaning" that the provision is unambiguous. *Id.*, ¶ 46 (citation omitted).

¶ 7.   If, after this analysis, a statute "is capable of being understood by reasonably well-informed persons in two or more senses," the statute is ambiguous. *Id.*, ¶ 47. If we find a statute is ambiguous, we resort to extrinsic sources such as legislative history to ascertain its meaning. *Id.*, ¶ 51.

¶ 8.   Thus, we turn to the scope, context, and purpose of the sexual assault statute, to the extent it is ascertainable from the text. While "[s]ome statutes contain explicit statements of legislative purpose or scope," sometimes "[a] statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes—that is, from its context or the structure of the statute as a coherent whole." *Kalal*, 271 Wis. 2d 633, ¶ 49. WISCONSIN STAT. § 940.225 does not contain an express statement of its purpose, but it is ascertainable from the context of the statute and has been recognized by the supreme court.[3] Section 940.225 is contained within

---

[3] We recognize that the supreme court's statements as to the purpose of WIS. STAT. § 940.225 are not "ascertainable from the text" of the statute itself. However, because we are not free to disregard language of the supreme court, *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997), we are bound by its interpretation of the purpose of the statute. Otherwise, we would be free to conclude that the primary purpose of § 940.225 is contrary to the purpose found by the supreme court, which is impermissible under *Cook*. We also recognize that *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110, did not specify whether prior case law is an extrinsic source that may not be consulted absent a finding of

WIS. STAT. ch. 940, Crimes Against Life and Bodily Security. It is further located within subchapter II, Bodily Security. The supreme court has said that the enactment of the current sexual assault statute reflected the legislature's recognition that "what had previously been referred to as crimes against sexual morality . . . .[,] when coupled with force[,] constituted dangerous threats to life and bodily security." *State v. Eisch*, 96 Wis. 2d 25, 37–38, 291 N.W.2d 800 (1980). It has also said that § 940.225 is "primarily directed at protecting one's freedom from sexual assault." *State v. Sauceda*, 168 Wis. 2d 486, 497, 485 N.W.2d 1 (1992). Thus, the legislative purpose of § 940.225 is to protect an individual from threats against bodily security. While sexual intercourse with a corpse unquestionably presents a case of sexual immorality, the relevant question is whether sexual intercourse with a corpse, unrelated to the individual's death, is an activity the legislature intended to proscribe in a statute geared toward protecting bodily security.

¶ 9. We begin with the structure of the sexual assault statute. WISCONSIN STAT. § 940.225 protects bodily security by prohibiting four degrees of sexual assault, each of which requires an absence of consent by the victim. Here, Grunke was charged with attempted

statutory ambiguity, and that there has been some disagreement as to the scope of extrinsic sources. *See Wisconsin Dep't of Revenue v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶ 81 n.1, 299 Wis. 2d 561, 729 N.W.2d 396 (Abrahamson, C.J., dissenting) ("I wonder whether under the majority's rubric prior case law interpreting a statute in question would also be considered an 'extrinsic source,' to be used only when a statute is deemed ambiguous."). We conclude that the better approach for the court of appeals is to consider prior case law stating the purpose of a statute in interpreting its plain meaning, so as to adhere to the clear mandate in *Cook*.

third-degree sexual assault under subsection (3), which provides in part: "Whoever has sexual intercourse with a person without the consent of that person is guilty of a Class G felony." Subsection (4) explains: " 'Consent,' as used in this section, means words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact." The subsection further specifies that "[c]onsent is not an issue in alleged violations of sub. (2)(c), (cm), (d), (g), (h), and (i)." The enumerated subsections prohibit sexual contact or sexual intercourse with an individual who cannot give consent due to mental illness, intoxication, or unconsciousness; or where the defendant is an employee of certain facilities or programs and the victim is a patient or resident, if the defendant is a staff member at a correctional institution and the victim is an inmate, or if the defendant is a parole, probation, or extended supervision agent who supervises the victim.

¶ 10. Consent, therefore, is defined as words or actions and distinguished from instances in which consent will not be an issue because the victim is incapable of giving consent. The implication is that in circumstances not listed as excluding the issue of consent, the victim was capable of giving consent through words or actions. Because a corpse can never give consent through words or actions and death is not one of the instances listed in which consent is not an issue,[4] but at the same time subsection (7) states that the entire section applies whether the victim is dead or

---

[4] We agree with Grunke that the term "unconsciousness" cannot reasonably be read to include death. Moreover, the State did not charge Grunke with violating Wis. Stat. § 940.225(2)(d), which prohibits sexual contact or sexual intercourse with a person the defendant knows is unconscious.

alive at the time of the sexual contact or sexual intercourse, the interaction of these subsections creates an ambiguity.[5]

¶ 11.   Thus, viewing the entire statute in context and in light of its purpose of protecting bodily security, we conclude that the statute is ambiguous. The interpretation posited by the State—that it is irrelevant whether the defendant played a role in the death of the victim, and that the statute criminalizes necrophilia generally—is a reasonable interpretation. Indeed, the language in subsection (7) appears on its face to criminalize sexual contact or sexual intercourse with a person who is dead, and contains no limiting language. However, we agree with Grunke that the statute is rendered ambiguous when read in its entirety, so that his interpretation—that subsection (7) is limited to criminalizing the act of sexually assaulting and causing the death of a person who is alive at the beginning of the course of events and dead at the conclusion, regardless of when the victim's death occurs in that series of events—is also a reasonable interpretation. This interpretation gives effect to the concept of consent contained in § 940.225(3). It is also supported by the title to subsection (7), "DEATH OF VICTIM," which implies that the

<hr>

[5] The circuit court found that WIS. STAT. § 940.225(7) requires a "victim," which is defined in WIS. STAT. § 940.41(2) as a "natural person," and that a corpse is "human remains" as defined under WIS. STAT. § 157.061(8), rather than a natural person. We agree with the State that this reasoning is flawed in that § 940.41 expressly applies only to WIS. STAT. §§ 940.42 to 940.49. However, we share the circuit court's concern that there is a factual distinction between a victim who has died and a corpse or human remains. The State's interpretation disregards this distinction.

victim dies during the assault.[6] Because we conclude that the statute is ambiguous, we turn to legislative history to aid our analysis.

¶ 12. WISCONSIN STAT. § 940.225 was first enacted in 1976. Laws of 1975, ch. 184, § 5. Subsection (7) was added to the statute in 1986. 1985 Wis. Act 134. A Drafter's Note in the Wisconsin Legislative Reference Bureau drafting file for that provision states: "Problem —don't want prosecutions to fail because the DA has to prove that victim was alive at the time SA took place— Have statute so that DA does not have to prove that victim was alive or dead." We agree with Grunke that the timing of the amendment and the comment in the drafting file indicate that the amendment was intended to prevent the defense recognized the previous year in *State v. Holt*, 128 Wis. 2d 110, 382 N.W.2d 679 (Ct. App. 1985).

¶ 13. Holt was convicted of first-degree murder under WIS. STAT. § 940.01(1) (1979–80) and first-degree sexual assault under WIS. STAT. § 940.225(1)(a) (1979–80). *Holt*, 128 Wis. 2d at 116. Holt followed a woman as she left a bar, forced her into his car, and then sexually assaulted and killed her. *Id.* at 116–17. Holt argued that the evidence was insufficient to convict him of sexual assault because the State did not present adequate evidence establishing that the victim was alive if and when the sexual assault occurred. *Id.* at 121. The State agreed that the sexual assault statutes as they then existed did not allow conviction for sexual assault if the sexual assault occurred after the victim

---

[6] "Although the title is not part of the statute it may be persuasive of the interpretation to be given the statute." *Mireles v. LIRC*, 2000 WI 96, ¶ 60 n.13, 237 Wis. 2d 69, 613 N.W.2d 875 (citation omitted).

died, but argued that the jury could have inferred from the evidence that the victim was alive when Holt sexually assaulted her. *Id.*

¶ 14.  We concluded that "in a rape-murder case where the exact sequence of events cannot be proved, the jury may reasonably infer, though it need not do so, that the victim was alive during the sexual assault, at least in the absence of evidence of necrophilic tendencies on the part of the accused." *Id.* We stated that if, as Holt argued, a defendant did not realize a victim was dead when he sexually assaulted her, "the defendant is free to conduct his defense accordingly, and the jury is free to believe him." *Id.* Thus, *Holt* established that WIS. STAT. § 940.225, prior to the enactment of subsection (7), required the prosecution to prove that the victim was still alive when the sexual assault took place in order to obtain a conviction. The enactment of subsection (7) the following year, with the drafting file showing that it was intended to address the problem of a prosecutor's having to prove that a victim was alive when the sexual assault occurred, indicates that the legislature was trying to prevent the *Holt* defense from preventing convictions.

██

¶ 15.  In contrast, the act of recovering a corpse from a grave to engage in sexual intercourse with the corpse does not present the problem of the prosecutor having to prove that the victim was alive at the time of sexual intercourse. If the legislature had intended to allow prosecutions for sexual assault regardless of the circumstances under which the defendant obtained the corpse, it would not have identified the problem being addressed as a prosecutor's having to prove whether the victim was alive during the sexual assault. Thus, we conclude that the legislature did not enact WIS. STAT.

323

§ 940.225(7) as a general necrophilia statute, which would criminalize Grunke's conduct. Accordingly, we affirm.

*By the Court.*—Order affirmed.