STATE of Wisconsin,
Plaintiff-Appellant-Petitioner,

v.

Alexander Caleb GRUNKE,
Defendant-Respondent.

STATE of Wisconsin,
Plaintiff-Appellant-Petitioner,

v.

Nicholas Owen GRUNKE,
Defendant-Respondent.

STATE of Wisconsin,
Plaintiff-Appellant-Petitioner,

v.

Dustin Blake RADKE,
Defendant-Respondent.

Supreme Court

*Nos. 2006AP2744–CR, 2006AP2745–CR, 2006AP2746–CR.
Oral argument March 5, 2008.—Decided July 9, 2008.*

2008 WI 82

(Also reported in 752 N.W.2d 769.)

For the plaintiff-appellant-petitioner the cause was argued by *William L. Gansner*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the defendant-respondent, Nicholas Owen Grunke, there was a brief by *Suzanne Edwards* and *Law Office of Suzanne Edwards*, Dodgeville, and oral argument by *Suzanne Edwards*.

For the defendant-respondent, Dustin Blake Radke, there was a brief and oral argument by *Jefren E. Olsen*, assistant state public defender.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review a decision by the court of appeals[1] affirming an

---

[1] *State v. Grunke*, 2007 WI App 198, 305 Wis. 2d 312, 738 N.W.2d 137.

order of the circuit court[2] that dismissed one count of attempted third-degree sexual assault, contrary to Wis. Stat. § 940.225(3) (2005–06)[3] and Wis. Stat. § 939.32, against Nicholas Grunke, Alexander Grunke and Dustin Radke. The issue presented is whether § 940.225 criminalizes sexual contact or sexual intercourse with a victim already dead at the time of the sexual activity when the accused did not cause the death of the victim. We conclude that it does. Accordingly, we reverse the court of appeals and remand to the circuit court for further proceedings consistent with this opinion.

## I. BACKGROUND

¶ 2. For purposes of this appeal, the facts presented are undisputed. Nicholas Grunke sought and received the consent of his twin brother, Alexander Grunke, and his friend, Dustin Radke, to help him disinter a female corpse located in a Cassville, Wisconsin cemetery so that the three of them could transfer the corpse to another location where Nicholas planned to have sexual intercourse with it. Apparently, Nicholas conceived this plan after seeing the obituary of the victim[4] in a newspaper.

¶ 3. The Grunkes and Radke began to execute Nicholas's plan days after Nicholas read the obituary. Nicholas and Radke drove together to the Cassville cemetery and located the victim's gravesite. Later, on September 2, 2002, the three defendants returned to the cemetery with shovels, a crowbar, a tarpaulin, and a

---

[2] The Honorable George S. Curry of Grant County Circuit Court presided.

[3] All subsequent references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise noted.

[4] We deem it appropriate to withhold the woman's name.

box of condoms, which the men had purchased that evening on their way to the cemetery. Nicholas and Radke dug into the victim's gravesite while Alexander stood watch. The men dug a hole three and a half feet wide, by three feet long, by one foot eight inches deep. The crater uncovered the top of the victim's concrete vault, which they were unable to pry open. Soon after the Grunkes and Radke discovered that the concrete vault was impenetrable, a car drove into the cemetery, and the men fled.

¶ 4. At 11 p.m. that evening, Village of Cassville Police Officer Brent McDonald arrived at the cemetery in response to receiving a call of a suspicious vehicle located there. Upon finding the vehicle, Officer McDonald also encountered Alexander Grunke. Alexander was dressed in black from "head to toe," and when he opened the door to the van the defendants had driven, Officer McDonald could see a crowbar, a tarpaulin and the box of condoms inside. When Alexander could not explain to Officer McDonald why he was in the cemetery, Officer McDonald placed him in custody. Alexander and Radke later gave interviews to law enforcement officers after waiving their *Miranda* rights.

¶ 5. In a multi-count criminal complaint, the State charged the Grunkes and Radke with (1) attempted theft, contrary to Wis. Stat. §§ 943.20(1)(a) and (3)(a), 939.05, and 939.32; and (2) attempted third-degree sexual assault, contrary to Wis. Stat. §§ 940.225(3), 939.05, and 939.32.[5]

---

[5] After the preliminary hearing, the circuit court ordered the defendants bound over on damage to cemetery property, contrary to Wis. Stat. § 943.012(1) and (2), and on attempted damage to property, contrary to Wis. Stat. §§ 943.01 and 939.22. The defendants do not challenge the circuit court's order; however, we mention the charges disclosed in the order because

¶ 6. Following the preliminary hearing, the circuit court denied bindover on the charge of attempted third-degree sexual assault. The court concluded that the sexual assault statute did not apply to circumstances in which the victim is deceased due to no act of the accused.

¶ 7. The court of appeals affirmed. It concluded that a combination of provisions within Wis. Stat. § 940.225 rendered the statute ambiguous. On the one hand, the court noted, under § 940.225(3), the State must prove that the sexual intercourse occurred "without the consent" of the person victimized. *State v. Grunke*, 2007 WI App 198, ¶ 9, 305 Wis. 2d 312, 738 N.W.2d 137. However, the court pointed out that subsection (4) provides a list of occasions where "consent is not an issue," but the victim being dead is not included in that list. *Id.*, ¶¶ 9–10. The court of appeals also observed that subsection (7) of § 940.225 provides that the entire statute applies regardless of whether the victim is dead or alive at the time of the sexual contact or sexual intercourse. *Id.*, ¶ 10. Consequently, the court of appeals concluded that "[b]ecause a corpse can never give consent through words or actions and death is not one of the instances listed in which consent is not an issue, but at the same time subsection (7) states that the entire section applies whether the victim is dead or alive at the time of the sexual contact," the statute is ambiguous. *Id.*, ¶¶ 10–11.

---

it contains a typo that should be corrected. It seems apparent that the circuit court meant to bind the defendants over on Wis. Stat. § 939.32, "Attempt," but actually bound them over on § 939.22, "Words and phrases defined." The order should be amended to reflect that the defendants are bound over on § 939.32, rather than on § 939.22.

¶ 8. Because the statute was ambiguous, the court of appeals consulted its legislative history. *Id.*, ¶ 12. It concluded that the legislative history showed that subsection (7) of Wis. Stat. § 940.225 was enacted in response to *State v. Holt,* 128 Wis. 2d 110, 382 N.W.2d 679 (Ct. App. 1985).[6] *Grunke,* 305 Wis. 2d 312, ¶ 12. Based on the reference to *Holt* in the legislative history, the court of appeals in *Grunke* concluded that § 940.225 applied to corpses only when the sexual assault victim was killed and sexually assaulted by the same perpetrator during a sequence of events and, accordingly, it did not apply to a sexual assault of a corpse when the defendant did not cause the death. *Id.*, ¶¶ 14–15. Therefore, the court concluded that the defendants could not be charged under § 940.225. *Id.*, ¶ 15.

¶ 9. We granted review and now reverse and remand.

## II. DISCUSSION

A. Standard of Review

■

¶ 10. This case requires us to interpret and apply Wis. Stat. § 940.225 to undisputed facts. We review questions of statutory interpretation and application independently, but benefiting from the discussions of the circuit court and the court of appeals. *Marder v. Bd. of Regents of the Univ. of Wis. Sys.,* 2005 WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110.

---

 [6] In *State v. Holt,* 128 Wis. 2d 110, 382 N.W.2d 679 (Ct. App. 1985), the court of appeals concluded that to convict a defendant of first-degree sexual assault under the then current statutes, the State must prove that the victim was alive at the time of the sexual assault. *Id.* at 121.

## B. The Parties' Positions

¶ 11. The parties offer competing interpretations of Wis. Stat. § 940.225. The defendants argue that the statute is ambiguous and therefore we must rely on extrinsic sources, such as legislative history, to guide our interpretation. In contrast, the State argues that the language of the statute bears a plain meaning, rendering it unnecessary for us to consult legislative history to discern its meaning. Before examining the language of the statute, it is instructive to examine the parties' respective arguments in greater detail.

### 1. Defendants' position

¶ 12. The defendants offer a multi-part interpretation that we summarize briefly. They posit that the plain meaning of subsection (7) of Wis. Stat. § 940.225 does not criminalize sexual contact or sexual intercourse with a corpse, because, when that subsection is read in conjunction with other portions of the statute, an element of third-degree sexual assault becomes superfluous, and also, such an application of subsection (7) creates absurd results.

¶ 13. First, the defendants argue that to interpret subsection (7) of Wis. Stat. § 940.225 as a "general prohibition against necrophilia" renders the element of consent in subsection (3) superfluous. Consent as used in § 940.225 means, "words or overt actions" and obviously a corpse cannot speak or act as required by § 940.225(4). They contend that subsection (4) contains an exclusive list of circumstances in which consent is "not an issue" and death is not among those circumstances listed. They conclude that the State can prove that the victim did not consent only by ignoring the element of consent or by reading its definition out of the statute.

447

¶ 14. Second, the defendants argue that interpreting Wis. Stat. § 940.225(7) as a "general prohibition against necrophilia" creates absurd results. They contend that such an interpretation clashes with the graduated penalty structure of § 940.225. They point out that § 940.225 contains four degrees of sexual assault and punishes certain perpetrators to a greater extent than others. For example, a perpetrator of sexual assault who threatens the victim with a dangerous weapon is guilty of a Class B felony,[7] § 940.225(1)(b), while other occasions of sexual assaults result in lesser punishments. The defendants argue that if subsection (7) is interpreted as a "general prohibition against necrophilia," § 940.225 will provide for four degrees of sexual assault of a corpse. Such an interpretation is absurd, they contend, because, to use the example above, a corpse is unable to apprehend the threat that accompanies a sexual assault with a dangerous weapon.

¶ 15. The defendants argue that the surplusage of the element of consent and the absurd result of graduated penalties for having sexual contact or sexual

---

[7] The defendants' argument describes first-degree sexual assault. Wisconsin Statute § 940.225(1) provides:

First degree sexual assault. Whoever does any of the following is guilty of Class B felony:

(a) Has sexual contact or sexual intercourse with another person without consent of that person and causes pregnancy or great bodily harm to that person.

(b) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a dangerous weapon.

(c) Is aided or abetted by one or more other persons and has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence.

intercourse with a corpse renders Wis. Stat. § 940.225 ambiguous. As a result, they argue we should consult legislative history to interpret the statute. They argue that the legislative history of subsection (7) indicates that it was enacted to relieve the State from being required to prove that the victim was alive when the sexual assault occurred in those circumstances in which the perpetrator sexually assaults and kills the victim in a series of acts. Accordingly, the defendants contend we should construe subsection (7) as criminalizing the act of sexually assaulting and causing the death of a person who is alive at the beginning of the sexual assault, but dead when the assailant completes his crimes.

2. State's position

¶ 16. The State, in contrast, argues that Wis. Stat. § 940.225(7) is unambiguous; that by its terms the statute subjects individuals to criminal penalty for sexual assault "whether a victim is dead or alive at the time of the sexual contact or sexual intercourse." The State contends that the limited interpretation that the defendants offer is refuted by subsection (7)'s plain language. There is nothing in subsection (7) that suggests it applies only to those circumstances in which the perpetrator sexually assaults and kills the victim.

¶ 17. Moreover, the State argues, the plain meaning of Wis. Stat. § 940.225(7) does not render the element of consent in the various provisions of § 940.225 superfluous. Because a dead person is incapable of giving or withholding consent, there is no reason to include death among the circumstances listed in subsection (4) in which consent "is not an issue."

¶ 18. In addition, the State argues that the graduated penalty for sexual assault within Wis. Stat. § 940.225 does not create absurd results when subsec-

tion (7) is interpreted as criminalizing sexual contact or sexual intercourse with a corpse. The State agrees that first-degree sexual assault of a dead person is factually impossible to commit. However, it points out that the possibility that the facts of a particular case will not come within the elements necessary to establish every crime listed in § 940.225 does not mean that the statute is absurd, but rather, it simply means that the evidence necessary for all potential crimes under § 940.225 does not exist in all cases.

¶ 19. Finally, the State contends that, even though the legislative history of Wis. Stat. § 940.225(7) suggests it was enacted to relieve the State of the burden of proving that the victim was alive when the sexual assault occurred during a rape-murder, the plain language is not limited to that scenario. Contrary to the defendants' argument, the State contends, by its terms, subsection (7) is not limited to circumstances in which the same defendant both murders and sexually assaults the victim and the sequence of those crimes cannot be established.

C. Wisconsin Stat. § 940.225

1. General principles

¶ 20. We accepted review to decide whether Wis. Stat. § 940.225 criminalizes sexual contact or sexual intercourse with a victim already dead at the time of the sexual activity when the defendant did not cause the victim's death.[8] The relevant facts are undisputed; accordingly, the issue presented requires us to interpret various provisions of § 940.225.

---

[8] We hasten to note that the defendants do not challenge the sufficiency of the attempt evidence. Accordingly, whether their actions constitute an attempt is not at issue.

¶ 21. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell*, 2000 WI 76, 236 Wis. 2d 211, 232, 612 N.W.2d 659). Plain meaning may be ascertained not only from the words employed in the statute, but from the context. *Id.*, ¶ 46. We interpret statutory language in the context in which those words are used; "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*

¶ 22. If the words chosen for the statute exhibit a "plain, clear statutory meaning," without ambiguity, the statute is applied according to the plain meaning of the statutory terms. *Id.*, ¶ 46 (quoting *Bruno v. Milwaukee County*, 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656). However, if a statute is "capable of being understood by reasonably well-informed persons in two or more senses[,]" then the statute is ambiguous, and we may consult extrinsic sources to discern its meaning. *Id.* at ¶¶ 47–48, 50. While extrinsic sources are usually not consulted if the statutory language bears a plain meaning, we nevertheless may consult extrinsic sources "to confirm or verify a plain-meaning interpretation." *Id.*, ¶ 51.

2. Application of Wis. Stat. § 940.225

¶ 23. We begin our analysis with the language of the statute. *Id.*, ¶ 45. Section 940.225 of the Wisconsin Statutes provides in relevant part:

(3) Third degree sexual assault. Whoever has sexual intercourse with a person without the consent of that person is guilty of a Class G felony. . . .

. . . .

(4) Consent. "Consent", as used in this section, means words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact. Consent is not an issue in alleged violations of sub. (2)(c), (cm), (d), (g), (h), and (i). The following persons are presumed incapable of consent but the presumption may be rebutted by competent evidence, subject to the provisions of s. 972.11(2):

(b) A person suffering from a mental illness or defect which impairs capacity to appraise personal conduct.

(c) A person who is unconscious or for any other reason is physically unable to communicate unwilling-ness to an act.

. . . .

(7) Death of victim. This section applies whether a victim is dead or alive at the time of the sexual contact or sexual intercourse.

¶ 24. Prosecution of the defendants for attempted third-degree sexual assault when the victim is already dead invokes multiple subsections of Wis. Stat. § 940.225, and we must interpret those subsections in context as they relate to each other. *Kalal,* 271 Wis. 2d 633, ¶ 46. Under subsection (3), one who has sexual intercourse with a person "without the consent" of that person is guilty of a Class G felony. § 940.225(3). Sub-section (4) lists circumstances in which "consent is not an issue," and the circumstance of the victim being dead

is not among them.[9] § 940.225(4). Subsection (4) also defines "consent" as "words or overt actions . . . indicating a freely given agreement to have sexual intercourse." *Id.* The defendants contend that, because a corpse cannot provide or withhold consent, allowing prosecution for sexual intercourse with a corpse under subsection (7) would clash with the requirement in subsection (3) that the intercourse occur without the victim's consent. The defendants are incorrect.

¶ 25. There is no statutory ambiguity or incompatibility between, on the one hand, a victim being incapable of consent because the victim is dead and, on the other hand, subsection (3)'s requirement that sexual intercourse occur "without the consent" of the victim. In order to achieve a conviction for third-degree sexual assault under Wis. Stat. § 940.225(3), the State must still prove the element "without consent" beyond a reasonable doubt; that endeavor is subject to a simple proof when the victim is a corpse.

¶ 26. The defendants' ambiguity argument with respect to the consent element of the statute suggests that they believe an element of a crime is rendered superfluous merely because it is simple to prove. They are mistaken. An element of a crime is not rendered superfluous because that element might be relatively easy to prove under the facts of a particular case. Rather, an element of a statute is superfluous when it is redundant of some other portion of the statute. *See, e.g., State v. Dibble,* 2002 WI App 219, ¶ 15, 257 Wis. 2d

---

[9] The statute specifies that a victim is legally unable to consent if the victim has a mental illness (subsection (2)(c)), is intoxicated (subsection (2)(cm)), is unconscious (subsection (2)(d), or is under the care or supervision of certain institutions or facilities (subsections (2)(g), (h) and (i)).

274, 650 N.W.2d 908 (concluding that "reckless" and "utter disregard" are two distinct elements); *State v. Dauer*, 174 Wis. 2d 418, 431–32, 497 N.W.2d 766 (Ct. App. 1993) (concluding that "verbal, written or printed" threats are not redundant in regard to the crime of extortion). Similarly, no redundancy is created by the "without consent" element of subsection (3).

¶ 27. Moreover, the presence of subsection (7), which states that Wis. Stat. § 940.225 applies whether the victim is dead or alive, does not render the "without consent" element of subsection (3) superfluous. This is so because the statute also recognizes certain circumstances in which consent is "not an issue," thereby exempting the State from having to prove the lack of consent element in limited circumstances and without removing lack of consent as an element from other provisions. § 940.225(4). The absence of the circumstance of a dead victim from the list of circumstances in which consent is "not an issue" does not cause the lack of consent to become a superfluous element of the crime; rather, the absence merely leaves the element of consent intact. Subsection (7) reinforces that the State must prove that the sexual contact or sexual intercourse occurred without the victim's consent even though the victim is dead; by the plain meaning of its terms, subsection (7)'s application is not so limited as the defendants contend.

¶ 28. The defendants' argument that subsections (7) and (3) conflict further stems from their mistaken interpretation of Wis. Stat. § 940.225 to require the State to prove that the victim withheld consent. The element "without consent" in subsection (3) requires no affirmative act, such as the withholding of consent, on the part of the victim. Rather, the State must prove that there was *no affirmative consent.* Stated otherwise, the

plain language of subsection (3) requires the State to prove beyond a reasonable doubt that the defendants attempted to have sexual intercourse with the victim without her "words or overt actions . . . indicating a freely given agreement to have sexual intercourse." Wis. Stat. § 940.225(4). The State does not have to prove that the victim withheld consent.

¶ 29. Accordingly, contrary to the defendants' assertions, subsections (3) and (7) exist in harmony.

¶ 30. The defendants' second argument, that interpreting subsection (7) as a "general prohibition against necrophilia" leads to absurd results, is equally unavailing. The interpretation of Wis. Stat. § 940.225(7) as criminalizing sexual contact or sexual intercourse with a dead person does not create the absurd prospect of four degrees of sexual assault of a dead person, as the defendants suggest. The State agrees with the defendants that one who has sexual contact or sexual intercourse with a dead person could not be charged with first-degree[10] or second-degree[11]

---

[10] The statutory provisions of first-degree sexual assault are contained in note 7, *supra*.

[11] Second-degree sexual assault is described in Wis. Stat. § 940.225(2) as follows:

Second degree sexual assault. Whoever does any of the following is guilty of a Class C felony:

(a) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence.

(b) Has sexual contact or sexual intercourse with another person without consent of that person and causes injury, illness, disease or impairment of a sexual or reproductive organ, or mental anguish requiring psychiatric care for the victim.

(c) Has sexual contact or sexual intercourse with a person who suffers from a mental illness or deficiency which renders that

sexual assault, because such facts cannot correspond with the elements of those two charges. However, the

person temporarily or permanently incapable of appraising the person's conduct, and the defendant knows of such condition.

(cm) Has sexual contact or sexual intercourse with a person who is under the influence of an intoxicant to a degree which renders that person incapable of giving consent if the defendant has actual knowledge that the person is incapable of giving consent and the defendant has the purpose to have sexual contact or sexual intercourse with the person while the person is incapable of giving consent.

(d) Has sexual contact or sexual intercourse with a person who the defendant knows is unconscious.

(f) Is aided or abetted by one or more other persons and has sexual contact or sexual intercourse with another person without the consent of that person.

(g) Is an employee of a facility or program under s. 940.295(2)(b), (c), (h) or (k) and has sexual contact or sexual intercourse with a person who is a patient or resident of the facility or program.

(h) Has sexual contact or sexual intercourse with an individual who is confined in a correctional institution if the actor is a correctional staff member. This paragraph does not apply if the individual with whom the actor has sexual contact or sexual intercourse is subject to prosecution for the sexual contact or sexual intercourse under this section.

(i) Has sexual contact or sexual intercourse with an individual who is on probation, parole, or extended supervision if the actor is a probation, parole, or extended supervision agent who supervises the individual, either directly or through a subordinate, in his or her capacity as a probation, parole, or extended supervision agent or who has influenced or has attempted to influence another probation, parole, or extended supervision agent's supervision of the individual. This paragraph does not apply if the individual with whom the actor has sexual contact or sexual intercourse is subject to prosecution for the sexual contact or sexual intercourse under this section.

(j) Is a licensee, employee, or nonclient resident of an entity, as defined in s. 48.685(1)(b) or 50.065(1)(c), and has sexual contact or sexual intercourse with a client of the entity.

456

inapplicability of subsections (1) and (2) to circumstances where sexual contact or sexual intercourse with a dead person is alleged to have occurred is not an absurd result.

■

¶ 31. An absurd result follows when an interpretation would render the relevant statute contextually inconsistent[12] or would be contrary to the clearly stated purpose of the statute.[13] By its terms, Wis. Stat. § 940.225 applies regardless of whether the sexual assault victim is dead or alive. § 940.225(7). The plain meaning of the statute does not create internal inconsistencies; nor, obviously, does the plain meaning confound the statute's clearly stated purpose. To the contrary, it is entirely possible to apply § 940.225(7) as written and be consistent with the plain meaning of the statute's punishment of those who have sexual contact or sexual intercourse with a dead person. *See, e.g., Suchomel v. Univ. of Wis. Hosp. & Clinics,* 2005 WI App 234, ¶ 28, 288 Wis. 2d 188, 708 N.W.2d 13.

¶ 32. The defendants' third argument, that subsection (7) limits subsection (3) to only those circumstances in which the perpetrator kills and has sexual intercourse with the victim in a series of events, finds no support in the plain language of the statute. The defendants' argument is derived from *Holt* and from subsection (7)'s legislative history.

---

[12] *See, e.g., Indus. to Indus., Inc. v. Hillsman Modular Molding, Inc.,* 2002 WI 51, ¶ 20, 252 Wis. 2d 544, 644 N.W.2d 236 (concluding that an absurd result would follow were "person" interpreted to include only natural persons, and to exclude corporations, given the context in which "person" is used in the statute).

[13] *See, e.g., Suchomel v. Univ. of Wis. Hosp. & Clinics,* 2005 WI App 234, ¶ 28, 288 Wis. 2d 188, 708 N.W.2d 13.

¶ 33. Following his conviction for first-degree murder and first-degree sexual assault in a case predating the enactment of Wis. Stat. § 940.225(7), Holt argued there was insufficient evidence to convict him of sexual assault because the evidence could not support a finding that his victim was alive when he engaged in sexual intercourse with her. *Holt,* 128 Wis. 2d at 121. Although the court of appeals upheld Holt's conviction for sexual assault, shortly after the case was decided, the legislature enacted § 940.225(7). By enacting § 940.225(7), it appears that the legislature sought to close the loophole in the then current version of § 940.225 that Holt sought to exploit. A note contained in subsection (7)'s drafting file states: "Problem— don't want prosecution to fail because the DA [district attorney] has to prove that victim was alive at the time SA [sexual assault] took place—Have statute [so] that DA does not have to prove that victim was alive or dead." Drafting File for 1985 Wis. Act 134, *Analysis by the Legislative Reference Bureau* of 1985 A.B. 328, Legislative Reference Bureau, Madison, Wis.

¶ 34. While the parties agree that subsection (7) was enacted to remedy the problem identified in *Holt,* namely, proving that the victim was alive when the sexual assault occurred as part of a rape-murder, the language of subsection (7) does not so limit its application. Indeed, subsection (7), by its very terms, applies to all of Wis. Stat. § 940.225. The defendants direct us to no authority that stands for the proposition that, when the legislature enacts a statute to apply to a specific circumstance, the statute may be applied only to that circumstance. It is doubtful that such authority exists. Furthermore, when the United States Supreme Court considered such a contention, it concluded, "The fact that [the legislature] may not have foreseen all of the

consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." *Union Bank v. Wolas,* 502 U.S. 151, 158 (1991). The plain language of § 940.225(7) is our guidepost; and by its terms, it is not limited to circumstances in which a perpetrator murders and sexually assaults the victim in a series of events.[14]

---

[14] In addition, the defendants' suggestion that subsection (7) be interpreted to apply only to those circumstances in which the perpetrator commits a rape-murder in a series of events, thwarts the plain language the legislature chose to punish those who commit a sexual assault regardless of whether their victim is dead or alive. At oral argument, the defendants contended that only the person who caused the death of the victim could be prosecuted for sexual assault. The defendants cite the title of subsection (7), "Death of Victim," as support.

We reject the defendants' argument. The untoward results that could flow from such an interpretation may be illustrated by an example. Under the defendants' interpretation of the statute, had Nicholas Grunke killed the victim, and then both he and his brother Alexander had sexual intercourse with the victim's dead body, only Nicholas could be charged with and found guilty of sexual assault. Such an interpretation is contrary to the plain meaning of the statute, which nowhere indicates that prosecutions are limited to only those who cause the death of the victim.

The title of subsection (7) does not advance the defendants' argument. The title of the statute does not state that a perpetrator can be punished for attempted sexual assault of a corpse only when the perpetrator causes the victim's death. Moreover, because the title of a statute is not part of the statute, we do not consult the title "to create a doubt where none would otherwise exist." *Wis. Valley Improvement Co. v. Pub. Serv. Comm'n of Wis.,* 9 Wis. 2d 606, 618, 101 N.W.2d 798 (1960). The plain language of subsection (7) leaves no doubt as to the applicability of Wis. Stat. § 940.225 in these circumstances-: subsection (7) applies regardless of "whether a victim is dead

¶ 35. In addition, the legislative history supports, rather than confounds, our plain-meaning interpretation. *Kalal,* 271 Wis. 2d 633, ¶ 51. The note referenced above to which the parties direct us does not constitute the full legislative history of subsection (7). A note in the legislative council file for the Committee on Judiciary and Consumer Affairs, to which Assembly Bill 328 creating Wis. Stat. § 940.225(7) was referred, states:

### AB 328

Specifies that sexual assault laws are applicable whether the victim is alive or *dead* at the time of the assault

*Problem*: *Unclear* if sex. assault laws apply if not sure victim was alive at time of assault

- language "consent of another person" implies that victim is alive

- tough issue for jury to determine (issue arises in jury deliberations)

- In Homicide & sex assault case, may be able to prove sex assault, but not HOMICIDE

- No necrophilia stats. in WI

or alive." Accordingly, we will not construe the title of subsection (7) to create a contrary interpretation. *Id.*

The defendants' argument is further confounding when considered in tandem with their argument that the element of consent is superfluous. Their argument that the consent element is superfluous would apply equally when a perpetrator kills the victim and proceeds to have sexual contact or sexual intercourse with the corpse, the very *Holt*-type of circumstance for which subsection (7) was enacted. The defendants appear not to account for this disparity, and we decline to give judicial sanction to such an internally inconsistent interpretation of the statute.

Legislative Council file on 1985 A.B. 328 (capitalization and emphasis in original).

¶ 36. It appears from the note that the lack of a "necrophilia" statute in Wisconsin contributed to the problem of determining whether Wis. Stat. § 940.225, Wisconsin's sexual assault statute, applied when a victim may have been alive at the time of the assault. The expansive language of subsection (7) remedies the primary problem, as well as all four of the ancillary problems, identified in the legislative council file note. Accordingly, we conclude that the legislature meant that subsection (7) would remedy the problems it identified within § 940.225 prior to subsection (7)'s enactment. The legislative council file indicates that subsection (7) was enacted to punish those who engage in sexual contact or sexual intercourse with a dead victim, as well as a live victim. Therefore, the legislative history supports our interpretation that, by its plain meaning, subsection (7) is not so limited in meaning as the defendants contend.

¶ 37. In sum, by its plain terms, Wis. Stat. § 940.225 prohibits the conduct that the defendants are alleged to have attempted. Section 940.225(3) provides that "[w]hoever has sexual intercourse with a person without the consent of that person is guilty of a Class G felony," and § 940.225(7) provides that "[t]his section applies whether a victim is dead or alive at the time of the sexual contact or sexual intercourse." The language of the statute is clear on its face. A reasonably well-informed person would understand the statute to prohibit sexual intercourse with a dead person. In addition, the element of consent is not rendered superfluous by our interpretation. The State is obligated to prove beyond a reasonable doubt that the sexual intercourse was attempted without the victim's consent. Simplicity

of proof does not make an element superfluous. *See, e.g., Dibble,* 257 Wis. 2d 274, ¶¶ 13–15; *Dauer,* 174 Wis. 2d 418, 431–32. Furthermore, applying the plain meaning of § 940.225 does not create absurd results. It is not absurd that one who sexually assaults a dead person could not be punished for first-degree or second-degree sexual assault; such punishments are simply factually unavailable in cases in which the victim is a dead person. Finally, the legislative history verifies that the plain meaning of § 940.225 is not so limited as the defendants assert. Accordingly, the defendants may be charged with attempted third-degree sexual assault pursuant to § 940.225(3).

### III. CONCLUSION

¶ 38. The issue presented is whether Wis. Stat. § 940.225 criminalizes sexual contact or sexual intercourse with a victim already dead at the time of the sexual activity when the accused did not cause the death of the victim. We conclude that it does. Accordingly, we reverse the court of appeals and remand to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court for further proceedings consistent with this opinion.

¶ 39. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). The majority opinion purports to reach its result by relying on the "plain terms" of Wis. Stat. § 939.22. Majority op., ¶ 37. I agree with the dissent that the majority opinion does not rely on the statutory text to answer the question posed in the present case.

¶ 40. In examining not only the text of Wis. Stat. § 939.22 but also the legislative history and the consequences of various interpretations, the majority opinion and I conclude that the most reasonable interpretation of the statute is that it covers the fact situation presented. I therefore concur in the court's mandate.

¶ 41. ANN WALSH BRADLEY, J. (*dissenting*). The majority reaches a desired result through an undesirable analysis. I acknowledge that this is heinous conduct and good public policy would indicate that this conduct should be criminalized.

¶ 42. The majority believes that § 940.225(3) clearly covers sexual assault of a corpse. It concludes that the language of the statute "is clear on its face." Majority op., ¶ 37. It determines that "a reasonably well-informed person would understand the statute to prohibit sexual intercourse with a dead person." *Id.*

¶ 43. Unlike the majority, I conclude that the circuit court judge and the court of appeals judges here are "reasonably well-informed" persons. They unanimously concluded that § 940.225 does *not* prohibit sexual intercourse with a corpse. They determined (1) that the language of the statute was ambiguous and, (2) that when the legislature enacted § 940.225(3), it did not intend that the statute cover the conduct here.[1] I agree.

---

[1] We have previously determined that when courts reach contradictory interpretations of a statute, it "is indicative of ambiguity." *Teschendorf v. State Farm Ins. Cos.,* 2006 WI 89, ¶ 19, 293 Wis. 2d 123, 717 N.W.2d 258 (citing *Stockbridge Sch. Dist. v. Dep't of Public Instruction Sch. Dist. Boundary Appeal Bd.,* 202 Wis. 2d 214, 222, 550 N.W.2d 96 (1996)).

I

¶ 44. The majority explains that we accepted review in this case to decide whether Wis. Stat. § 940.225 criminalizes sexual intercourse with a corpse when the defendant did not cause its death. Majority op., ¶ 20. The engine that drives the majority's analysis is its belief that the language of the statute is "plain." It makes that assertion over and over again in the opinion. *See id.,* ¶¶ 27, 28, 31, 32, 34, 36, 37.

¶ 45. To begin, it is always suspicious to me when an opinion asserts that the meaning is plain and then proceeds to spend a multitude of pages explaining it. It is as though the lengthy explanation belies the assertion. If it is so plain, why is the explanation so complex and lengthy?

¶ 46. My suspicions are well founded when you examine the analysis. Let's start by looking at the text of the statute that the majority says is so plain. Wis. Stat. § 940.225 provides in relevant part:

> (3) Third Degree Sexual Assault. Whoever has sexual intercourse with a *person* without the *consent* of that person is guilty of a Class G felony. Whoever has sexual contact in the manner described in sub. (5)(b)2. or 3. with a person without the consent of that person is guilty of a Class G felony.

> (4) Consent. "Consent", as used in this section, means words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact. . . .

> (7) Death of Victim. This section applies whether a victim is dead or alive at the time of the sexual contact or sexual intercourse.

(Emphasis added.)

¶ 47. Looking at subsection (4), it is not at all "plain" how to apply the concept of consent to cases involving corpses. I don't think a corpse can give consent.

¶ 48. Subsection (4) provides a definition of consent—"words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact." That definition cannot apply to a corpse.

¶ 49. The majority, however, concludes that consent *is* an issue in this case. Apparently, as an element of the offense, the majority would have the jury determine whether the corpse consented to intercourse. According to the majority, consent is an element that is "simple to prove." Majority op., ¶ 26.

¶ 50. I find it unlikely that the legislature intended consent to be an element of a crime involving the sexual assault of a corpse. Under the majority's interpretation, prosecuting attorneys will now have to prove that element beyond reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000).

¶ 51. Another reason to doubt the majority's claim that the statute is "plain" is that the majority's interpretation renders subsection (7) superfluous. As noted above, the majority's view is that sexual assault of a corpse is proscribed by § 940.225(3) and that the consent element is merely "simple to prove" in the case of a corpse. Majority op., ¶¶ 25–27. If the majority is correct, however, there would be no need for subsection (7) in the statute.[2] The majority's interpretation therefore violates the principle of statutory construction that "meaning should be given to every word, clause and

---

[2] The majority focuses on whether applying Wis. Stat. § 940.225 to corpses renders subsection (3) or the element of

465

sentence in the statute, and a construction which would make part of the statute superfluous should be avoided wherever possible." *Hutson v. State Pers. Comm'n,* 2003 WI 97, ¶ 49, 263 Wis. 2d 612, 655 N.W.2d 212.

¶ 52. The language of the statute is thus far from "plain." Under the majority's "plain" meaning interpretation, prosecutors must now prove beyond a reasonable doubt that the corpse did not consent to intercourse. This makes no sense to me and I cannot imagine that it is what the legislature intended.

## II

¶ 53. The legislative history of § 940.225 indicates that subsection (7) was enacted to address cases in which the prosecutor could not prove whether the victim of a sexual assault was alive or dead at the time of the assault. Subsection (7) was created by 1985 Wis. Act 134, which passed the legislature in February 1986.

¶ 54. The drafting records for the bill include a drafter's note articulating the problem that the act was intended to address. The note states "Problem—don't want prosecution to fail because the DA has to prove that the victim was alive at the time the [sexual assault] took place." It further states a desire to "Have [a] statute so that DA does not have to prove that victim was alive or dead." Legislative Reference Bureau drafting file for 1985 Wis. Act 134.

¶ 55. Further, the history indicates that a case involving murder and sexual assault prompted the legislation. Just prior to the time that 1985 Wis. Act 134 was enacted, the court of appeals decided *State v. Holt,* 128 Wis. 2d 110, 382 N.W.2d 679 (Ct. App. 1985). The

---

consent superfluous. Majority op., ¶ 27. It fails to address the argument that applying the statute to corpses renders subsection (7) superfluous.

466

defendant in *Holt* was charged with sexual assault and murder. He argued that he could not be convicted of sexual assault because of insufficient evidence that the victim was alive at the time of the sexual assault. *Id.* at 121. The court of appeals determined that in a rape-murder case where the sequence of events cannot be proved, the jury may, but is not required to, infer that the victim was alive during the assault. *Id.*

¶ 56. The notes regarding the legislation indicate that it was intended to solve a single problem: prosecuting sexual assault where it is unclear whether the victim was alive at the time of the assault. Nothing in the legislative history indicates that the legislature intended Wis. Stat. § 940.225 to operate as a necrophilia statute.[3]

¶ 57. The language of the statute is far from "plain." The majority's interpretation requires prosecutors to prove beyond a reasonable doubt that a corpse did not consent, and it renders subsection (7) superfluous, neither of which were intended by the legislature. Likewise, the legislative history indicates that the legislature intended § 940.225(7) to apply to cases involving murder and sexual assault, and not to cases of necrophilia. I therefore respectfully dissent.

¶ 58. I am authorized to state that Justice LOUIS B. BUTLER, JR. joins this dissent.

---

[3] I also note that the legislature has expressly included necrophilia in the definition of "sexual conduct" in Wisconsin's obscenity statutes. Wisconsin Stat. § 944.21(2)(e) states " '[s]exual conduct' means the commission of any of the following: . . . necrophilia." This statutory language establishes that the legislature is aware of the conduct that constitutes necrophilia, has proscribed it as part of the obscenity statute, and has chosen not to proscribe it outside of the obscenity context.